76241. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY v. FEDERICK.
(371 SE2d 204)

McMURRAY, Presiding Judge.

Roscoe D. Federick (plaintiff) brought an action against Metropolitan Atlanta Rapid Transit Authority (MARTA) and David Lee Hubbard (defendant Hubbard), seeking damages which allegedly arose after plaintiff was struck by a MARTA bus that was being operated by defendant Hubbard. Defendants MARTA and Hubbard an-

swered and denied the material allegations of the complaint. Plaintiff subsequently amended his complaint and added a second count against MARTA, alleging that MARTA is self-insured, that MARTA failed to pay plaintiff's claim for no-fault benefits under the Georgia Motor Vehicle Accident Reparations Act and that more than 60 days has elapsed since MARTA received plaintiff's no-fault claim, thereby subjecting MARTA to statutory penalties in accordance with OCGA § 33-34-6 (b) (c).

A "CONSENT ORDER OF BIFURCATION" was entered, directing separate trials on plaintiff's tort claim (Count 1) and plaintiff's no-fault claim (Count 2). The no-fault claim was tried before a jury and the trial court "directed a verdict in favor of Plaintiff in the sum of $2,500.00 medical expense benefit pursuant to the Georgia Motor Vehicle Accident Reparations Act (OCGA § 33-34-1 et seq.), and the jury . . . found in favor of [MARTA] on all the remaining issues."

MARTA did not satisfy the judgment on plaintiff's no-fault claim within 60 days and plaintiff amended his complaint and added a third count seeking statutory damages against MARTA pursuant to OCGA § 33-34-6 (b) (c). MARTA filed a motion to dismiss Count 3 of plaintiff's complaint, arguing that it was not obligated to satisfy the non-final judgment on plaintiff's no-fault claim before final adjudication of plaintiff's tort claim.

The trial court denied MARTA's motion to dismiss and conducted a bench trial on Count 3 of the complaint. At trial, MARTA's attorney stated in his place that MARTA's refusal to pay the judgment on plaintiff's no-fault claim was not in bad faith, but that the judgment was left unsatisfied in contemplation of a direct appeal after adjudication of plaintiff's tort claim. MARTA's counsel explained that he did not pay the judgment on behalf of his client based on OCGA § 9-11-54 (b), which provides that a judgment as to fewer than all the claims is not final and is therefore not directly appealable absent an express determination by the trial court "that there is no just reason for delay and upon an express direction for the entry of judgment." In further support of its position, MARTA presented expert legal testimony to the effect that MARTA's refusal to pay plaintiff's no-fault claim was not in bad faith in light of the non-final judgment determining MARTA's liability to plaintiff for no-fault benefits. The trial court did not agree and a judgment was awarded to plaintiff for $29,340, comprising statutory damages, attorney fees and punitive damages. A jury trial was then conducted on plaintiff's tort claim and a verdict was rendered in favor of plaintiff for $370,000. This appeal followed. *Held*:

1. In its first enumeration of error, MARTA contends the trial court erred in failing to dismiss plaintiff's second no-fault action

(Count 3) and proceeding to trial on the issue of bad faith, arguing that MARTA's decision not to satisfy the $2,500 judgment entered on plaintiff's first no-fault action (Count 2) before adjudication of plaintiff's tort claim (Count 1) was, as a matter of law, "in good faith." We agree.

"Only a final judgment can be enforced. Wright, Miller & Kane, Federal Practice and Procedure, Civ.2d §2661; 6 J. Moore, Federal Practice 54.42; *Redding & Company v. Russwine Constr. Corp.*, 417 F.2d 721 (D.C. Cir. 1969). A judgment is final only when it disposes of the entire controversy, leaving nothing for the Court to do in the case. *Anastasiadis v. S. S. LITTLE JOHN*, 339 F.2d 538 (5th Cir. 1964). . . . In cases involving multiple claims and/or parties, FRCP 54 (b) [OCGA § 9-11-54 (b)] specifically provides that the Court may enter a final judgment if the Court makes 'an express determination that there is no just reason for delay' and makes 'an express direction for the entry of judgment.' A judgment entered in a multiple party and/or multiple claims case prior to the disposition of the entire case is not enforceable unless the requirements of Rule 54 (b) are followed. Wright, Miller & Kane, Federal Practice & Procedure, Civ.2d, § 2661; 6 J. Moore, Federal Practice 54.52; *Redding & Company v. Russwine Constr. Corp.*, supra." *Gauthier v. Crosby Marine Svc.*, 590 FSupp. 171, 175, 176 (1984).

In the case sub judice, the trial court did not follow the requirements of OCGA § 9-11-54 (b) to finalize the $2,500 judgment on plaintiff's first no-fault claim (Count 2). Consequently, the non-final judgment was unenforceable and MARTA, as a matter of law, did not act in bad faith in failing to pay the judgment before final adjudication of plaintiff's tort claim. However, even if MARTA failed to pay in error, its position was not so unreasonable so as to warrant bad faith penalties. See *Gauthier v. Crosby Marine Svc.*, 590 FSupp., supra at 176. In any event, the trial court erred in entering judgment against MARTA for penalties under OCGA § 33-34-6 (b).[1]

2. Next, MARTA contends the trial court erred in failing to give its written request to charge that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield." Although this instruction is an accurate statement of law as codified in OCGA § 40-6-91 (b), the trial court informed MARTA's attorney that the charge would be excluded because it did not con-

---

[1] Plaintiff's argument that the trial court's severance of his no-fault claim and tort claim under OCGA § 9-11-42 (b) circumvents the requirements of OCGA § 9-11-54 (b) is without merit. "OCGA § 9-11-42 (b) seeks to further judicial convenience or avoid prejudice, not to circumvent the requirements of OCGA § 9-11-54 (b) . . ." *Cable Holdings of Battlefield v. Lookout Cable Svc.*, 173 Ga. App. 355, 356 (326 SE2d 552).

form to the facts adduced at trial.

" 'It is the indisputable right of a litigant to have given in the charge a pertinent legal charge timely requested in writing.' *Summer v. Boyd*, 208 Ga. 207, 209 (66 SE2d 51). It is especially important that this right be recognized when the case is 'a close one under the evidence.' *Metropolitan St. R. Co. v. Johnson*, 90 Ga. 500, 501 (16 SE 49)." *Harris v. Cates*, 105 Ga. App. 178, 180 (3), 181 (123 SE2d 703), reversed on other grounds at 217 Ga. 801 (125 SE2d 649). From this perspective, the pivitol issue in the case sub judice is whether there was any evidence to support MARTA's theory that plaintiff was drunk at the time of the accident and that he negligently stumbled and fell into the bus as it was moving away from the bus stop. In this vein, Ms. Sandra Reese, a passenger on the MARTA bus at the time of the collision, testified that she observed plaintiff running through a nearby parking lot as the bus was approaching the bus stop and, after "the bus driver [defendant Hubbard] stopped, made his stop, his normal stop, then as he proceeded to pull off, there was a hit at the back of the bus; and he [defendant Hubbard] stopped and got off the bus [to investigate]." Ms. Reese further testified that she observed plaintiff lying in the street behind the bus after the accident. Defendant Hubbard testified that he had a clear view of the bus stop before approaching it and that he did not see plaintiff until after the apparent collision.

Other evidence which supported MARTA's claim showed that plaintiff had a blood alcohol content of .387 percent about an hour and a half after the accident. In fact, plaintiff admitted on cross-examination that he was "under the influence" at the time of the collision and that he had consumed a half-gallon of beer and had shared a half pint of gin or vodka with two co-workers before the collision. Further, Tom Allen, a "paramedic" who arrived at the scene of the collision, testified that plaintiff "reeked of alcohol" and Dr. Paul G. Jenko, one of the Grady Hospital physicians who treated plaintiff after the collision, testified that plaintiff appeared to be intoxicated and that plaintiff had "slurred speech, was refusing to follow commands, smelled terribly of alcohol, both on his breath and about his face [and that plaintiff refused] to answer questions or was not answering questions."

Contrary to plaintiff's contentions, we find the above evidence sufficient to authorize an instruction on a pedestrian's duty with regard to walking or running into the path of a vehicle. Consequently, since "[t]he charge requested by [MARTA] set out a correct statement of law [,] *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1 [(5 SE2d 214),] [t]herefore the court's failure to charge as requested was reversible error." *Harris v. Cates*, 105 Ga. App. 178, 180 (3), 181, supra.

3. In light of Division 2 of this opinion, it is not necessary to

address MARTA's remaining enumerations of error.
*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED JUNE 13, 1988 —
REHEARING DENIED JULY 1, 1988 —

*Donald P. Edwards, Jeffrey E. Tompkins*, for appellant.
*Thomas H. Nickerson, David E. Tuszynski*, for appellee.