**MINDIS METALS, INC. d/b/a Mindis Recycling, Appellant**

v.

**OILFIELD MOTOR & CONTROL, INC., Appellee.**

and

**In re Mindis Metals, Inc. d/b/a Mindis Recycling, Relator.**

Nos. 14–02–01040–CV, 14–02–01050–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 29, 2004.

Rehearing Overruled April 22, 2004.

478

Gary S. Freed, Atlanta, GA, Todd J. Zucker, Houston, for appellant.

Tanya Nicole Garrison, Jeffery K. Work, Katy, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## SUBSTITUTE OPINION

CHARLES W. SEYMORE, Justice.

Appellee's/Relator's Motion for Rehearing is overruled. The original opinion issued on April 17, 2003 is withdrawn, and the court issues this substitute opinion.

Mindis Metals, Inc. d/b/a Mindis Recycling filed a petition for writ of mandamus and an appeal following the trial court's order vacating a domesticated foreign judgment. We consolidated these proceedings. We deny the petition for writ of mandamus. We reverse and render, reinstating the judgment.

## I. BACKGROUND

In 1996, Mindis, a Georgia company, purchased some machinery from OMC Controls, Ltd. ("Controls"), OMC Motor & Control Services, Inc. ("OMC Services"), and Oilfield Motor & Control, Inc. ("Oilfield") [collectively, "the defendant-sellers"], all Texas companies. Mindis contends the machinery was defective and the defendant-sellers refused to honor their

warranty. In 1998, Mindis sued the three defendant-sellers in Georgia state court for breach of contract and breach of express and implied warranties. Mindis sought to recover the sums it expended repairing the machinery. An attorney representing the three defendant-sellers filed an answer. After extensive discovery, the Georgia court permitted the defendant-sellers' counsel to withdraw from the case.

In February 2001, the Georgia court entered summary judgment against all three defendant-sellers on liability and set a date for trial on unliquidated damages. At the first trial setting in August 2001, new defense counsel, acting only for Oilfield, requested and obtained a sixty-day continuance. At the second trial setting in November 2001, new counsel for Oilfield announced that OMC Services had filed for bankruptcy. At that time, the attorney stated that he did not represent any defendant-seller; however, he requested a continuance on behalf of the two non-bankrupt defendant-sellers and departed when it was denied. The trial judge allowed Mindis to proceed against Oilfield and Controls. On November 20, 2001, Mindis obtained a judgment in the amount of $116,653.88, jointly and severally, against Oilfield and Controls. Oilfield appealed the Georgia judgment; however, no supersedeas bond was purchased and filed in Georgia.

Meanwhile, Mindis duly domesticated the Georgia judgment in Texas by filing a notice and authenticated copy in the Harris County District Clerk's office. Less than thirty days later, Oilfield filed a Motion to Vacate the Judgment.[1] After it was overruled by operation of law, Oilfield filed a Supplemental Motion to Vacate. Subsequently, while the trial court re-

---

1. Notably, Oilfield did not request a stay to suspend post-judgment collection in Texas while the Georgia judgment was on appeal.

See TEX. CIV. PRAC. & REM.CODE ANN. § 35.006 (Vernon 1997).

tained plenary power, it vacated the domesticated judgment without stating a reason for its ruling. Mindis then filed a petition for writ of mandamus and this appeal. After oral argument, Mindis filed its Supplement to Petition for Writ of Mandamus informing us that the Georgia appeal has been dismissed "as abandoned."[2]

## II. MANDAMUS OR APPEAL?

■ Because the vehicle for challenging an order vacating a domesticated foreign judgment is unclear, Mindis filed both a petition for writ of mandamus and an appeal. In its first issue, Mindis suggests that mandamus is appropriate because the order is interlocutory, and, thus, not appealable.[3] *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (holding mandamus will not issue if there is an adequate remedy by appeal).

Our sister courts have reviewed orders vacating domesticated foreign judgments both as mandamus proceedings and as appeals. *Compare In re Jackson Person & Associates, Inc.,* 94 S.W.3d 815 (Tex.App.-San Antonio 2002, orig. proceeding); *Corporate Leasing Int'l, Inc. v. Bridewell,* 896 S.W.2d 419 (Tex.App.-Waco 1995, orig. proceeding); *Trinity Capital Corp. v. Briones,* 847 S.W.2d 324 (Tex.App.-El Paso 1993, orig. proceeding); *Merritt v. Harless,* 685 S.W.2d 708 (Tex.App.-Dallas 1984, orig. proceeding) *with Brown's Inc. v. Modern Welding Co.,* 54 S.W.3d 450 (Tex.App.-Corpus Christi 2001, no pet.) (affirming trial court order denying petition for domestication and vacating Wash-

ington state judgment); *Lawrence Sys., Inc. v. Superior Feeders, Inc.,* 880 S.W.2d 203 (Tex.App.-Amarillo 1994, writ denied) (affirming order of trial court vacating and rendering null and unenforceable Oklahoma court order); *Minuteman Press Int'l, Inc. v. Sparks,* 782 S.W.2d 339 (Tex.App.-Fort Worth 1989, no writ) (reversing trial court's refusal to give full faith and credit to New York judgment); *Strick Lease, Inc. v. Cutler,* 759 S.W.2d 776 (Tex.App.-El Paso 1988, no writ) (affirming stay of execution of Pennsylvania judgment for lack of in personam jurisdiction). We conclude that an appeal, rather than a mandamus proceeding, is the better vehicle for reviewing the order in this case.

■ With a few mostly statutory exceptions, an appeal may be taken only from a final judgment or order. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). A judgment or order is final for purposes of appeal if it disposes of all parties and all issues in a case, so that no further action is required by the trial court, except as necessary to carry out the decree. *See id.; Harper v. Welchem, Inc.,* 799 S.W.2d 492, 494 (Tex.App.-Houston [14th Dist.] 1990, no writ) (citing *Wagner v. Warnasch,* 156 Tex. 334, 338, 295 S.W.2d 890, 892 (1956)). The finality of a judgment or order is controlled by its substance, not its label or form. *See Mathes v. Kelton,* 569 S.W.2d 876, 878 n. 3 (Tex. 1978); *Int'l Sec. Life Ins. Co. v. Spray,* 468 S.W.2d 347, 350 (Tex.1971); *Quanaim v. Frasco Rest. & Catering,* 17 S.W.3d 30, 36–37 (Tex.App.-Houston [14th Dist.] 2000,

---

**2.** Oilfield sought to dismiss the Georgia appeal "without prejudice" on the day before its brief and "enumeration of errors" was due in the Georgia court of appeals. In its order, the Georgia court of appeals stated that Georgia rules do not provide for "withdrawal without prejudice." Because Oilfield had not timely filed a brief and "enumeration

of errors," the appeal was dismissed, "as abandoned." Thereafter, the Georgia court of appeals denied Oilfield's motion for reconsideration.

**3.** When we consolidated the proceedings, we asked the parties to address whether mandamus or appeal is the proper vehicle.

pet. denied); *Ferguson v. Naylor,* 860 S.W.2d 123, 129 (Tex.App.-Amarillo 1993, writ denied); *see also In re Tex. Natural Res. Conservation Comm'n,* 85 S.W.3d 201, 205 (Tex.2002) (citing *Qwest Communications Corp. v. AT & T Corp.,* 24 S.W.3d 334, 336 (Tex.2000)).

Here, Mindis sought to enforce the Georgia judgment in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA") by filing an authenticated copy with the Texas court. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001–.008 (Vernon 1997). The judgment became enforceable as a Texas judgment on the date it was filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Walnut Equip. Leasing Co., Inc. v. Wu,* 920 S.W.2d 285, 286 (Tex.1996). It was subject to the same defenses and proceedings for reopening, vacating, or staying a judgment as a judgment of the Texas court. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(c).

■ A motion contesting enforcement of a foreign judgment operates as a motion for new trial. *See Moncrief v. Harvey,* 805 S.W.2d 20, 23 (Tex.App.-Dallas 1991, no writ) (analogizing motion to vacate to motion for new trial with respect to filing deadlines and appellate timetables). Ordinarily, an order granting a new trial is interlocutory, and not appealable. *See Cummins v. Paisan Constr. Co.,* 682 S.W.2d 235, 236 (Tex.1984). However, an order that denies enforcement of a foreign judgment is not necessarily interlocutory

in the same manner as a traditional order granting a new trial and/or vacating a judgment. A new "trial" is not possible because there was no Texas trial in the first place; the filing of the foreign judgment comprises both an original petition and a final judgment. *See Walnut Equip. Leasing,* 920 S.W.2d at 286. Obviously, a Texas court cannot order a new trial to take place in the foreign jurisdiction.

Here, the trial court did not order a "new trial" in terms of returning the parties to their positions before the Georgia judgment was rendered.[4] It simply ruled that "the foreign Judgment filed by Mindis is not entitled to full faith and credit and is not enforceable in the State of Texas and that the filing of the foreign judgment is of no consequence or effect." Once the trial court ruled that the Georgia judgment was not enforceable in Texas, it terminated the outstanding claims and rights of all parties to this UEFJA proceeding, and there remained nothing for it to adjudicate. Accordingly, the order vacating the judgment was final for purposes of appeal. *See Reading & Bates Constr. Co. v. Lloyd,* 1995 WL 662623, at *1 (Tex.App.-Houston [14th Dist.] Nov. 9, 1995, orig. proceeding) (not designated for publication) (stating order refusing to recognize foreign judgment was final and appealable because relator brought the action solely for recognition and enforcement of the judgment).

■ Further, a creditor seeking to enforce a foreign judgment by filing a common-law action may appeal an adverse

---

4. In contrast, in each of the mandamus proceedings previously cited, the trial court had purported to grant a new trial when vacating a filed foreign judgment instead of simply determining whether the foreign judgment was enforceable in Texas. For example, in *Jackson Person,* the trial court used the term "new trial," set aside the foreign judgment, and ordered a new trial to be placed upon its own docket. 94 S.W.3d at 817. However,

the appellate court held that a Texas court may not grant a new trial that puts the parties back where they were before the trial in the foreign jurisdiction. *Id.* Therefore, the trial court abused its discretion by granting the "wrong type of relief," and the creditor had no remedy by appeal because a party cannot ordinarily appeal the grant of a new trial. *Id.* at 817–18.

ruling. *See, e.g., McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961).[5] Similarly, a creditor seeking to enforce a foreign judgment under the UEFJA should be allowed to appeal an adverse ruling. In addition, a debtor may appeal the denial of a motion to vacate a judgment in a UEFJA proceeding because a "judgment" remains in place. *See, e.g., Walnut Equip. Leasing,* 920 S.W.2d at 285; *Cash Register Sales & Serv. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Allowing a creditor also to appeal an adverse order in a UEFJA proceeding promotes parity to creditors.

Accordingly, the trial court's order vacating the domesticated Georgia judgment is appealable. We overrule Mindis's first issue and deny its petition for writ of mandamus.

### III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY VACATING THE DOMESTICATED FOREIGN JUDGMENT?

Mindis's second and third issues constitute its appeal from the order vacating the domesticated Georgia judgment. Mindis generally contends the trial court erred by vacating the judgment.

### A. THE APPLICABLE LAW

■ The United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1. Under this principle, Texas is required to enforce a valid judgment from another state. *See Bard v. Charles R. Myers Ins. Agency, Inc.,* 839 S.W.2d 791, 794 (Tex.1992); *Cash*

*Register Sales,* 62 S.W.3d at 280; *Reading & Bates Const. Co. v. Baker Energy Res. Corp.,* 976 S.W.2d 702, 712 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The party seeking to enforce a foreign judgment has the initial burden to present a judgment that appears on its face to be a final, valid, and subsisting judgment. *Russo v. Dear,* 105 S.W.3d 43, 46 (Tex. App.-Dallas 2003, pet. denied). When a judgment creditor files an authenticated copy of a foreign judgment pursuant to the UEFJA, a prima facie case for its enforcement is presented. *Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex.1975); *Cash Register Sales,* 62 S.W.3d at 280; *Reading & Bates Const. Co.,* 976 S.W.2d at 712. The burden then shifts to the judgment debtor to prove that the foreign judgment should not be given full faith and credit. *Mitchim,* 518 S.W.2d at 364; *Cash Register Sales,* 62 S.W.3d at 280–81; *Reading & Bates Const. Co.,* 976 S.W.2d at 712. The presumption of validity can only be overcome by clear and convincing evidence to the contrary. *Cash Register Sales,* 62 S.W.3d at 281; *Escalona v. Combs,* 712 S.W.2d 822, 824 (Tex.App.-Houston [1st Dist.] 1986, no writ). The laws of the state rendering the judgment determine its validity. *Bard,* 839 S.W.2d at 795.

■ The following exceptions to full faith and credit are well-established:

(1) when a decree is interlocutory; *Bard,* 839 S.W.2d at 794;

(2) when a decree is subject to modification under the law of the rendering state; *id.;*

(3) when the rendering court lacks jurisdiction; *Brown's Inc.,* 54 S.W.3d at 454, 456;[6]

---

**5.** Texas recognizes two methods of enforcing a foreign judgment: (1) complying with UEFJA, or (2) filing a common-law action to enforce the judgment. *See* TEX. CIV. PRAC. &

REM.CODE ANN. § 35.008; *Moncrief,* 805 S.W.2d at 22.

**6.** A defendant may challenge the jurisdiction of a sister state by demonstrating that (1)

(4) when the judgment was procured by *extrinsic* fraud; *see, e.g., Strick Lease,* 759 S.W.2d at 777; and

(5) when the period for enforcing the foreign judgment has expired. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.066 (Vernon 1997) (proscribing statute of limitations for enforcing foreign judgment); *see also Lawrence Sys.,* 880 S.W.2d at 211.

*See also Reading & Bates Const. Co.,* 976 S.W.2d at 712 (listing the five exceptions to full faith and credit).

In sum, by filing an authenticated copy of the Georgia judgment, Mindis presented a prima facie case for its enforcement in Texas, and the burden shifted to Oilfield to prove why it should not be given full faith and credit.

## B. STANDARD OF REVIEW

 The standard for reviewing an order vacating a domesticated foreign judgment on direct appeal is not clearly established. *Compare Nat'l Collection Serv., Inc. v. Ford,* 1996 WL 132240 (Tex.App.-Dallas Mar. 22, 1996, no writ) (not designated for publication) (reviewing order granting motion to strike filing of foreign judgment for abuse of discretion) *with Brown's, Inc.,* 54 S.W.3d 450 (finding trial court *did not err* in vacating filed foreign judgment); *Minuteman Press Int'l,* 782 S.W.2d 339 (examining evidence and holding trial court *erred* in refusing to give full faith and credit to foreign judgment); *see also Cash Register Sales,* 62 S.W.3d 278 (holding trial court *correctly denied* motion to vacate foreign judgment because debtor failed to overcome presumption of validity by clear and convincing evidence).

 We previously recognized that a motion to vacate a filed foreign judgment has been analogized to a motion for new trial. *See Moncrief,* 805 S.W.2d at 23. A trial court has broad discretion to grant a motion for new trial, and we may not disturb its ruling absent manifest abuse of discretion. *See Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding); TEX.R. CIV. P. 320 (providing new trial may be granted and judgment set aside for "good cause" on motion or the court's own motion). However, allowing a trial court the same broad discretion to vacate a properly filed foreign judgment would override the constitutional requirement that a trial court give full faith and credit to the foreign judgment unless the debtor proves an exception by clear and convincing evidence. *See* William Dorsaneo, III, 9 Tex. Litigation Guide § 134.04[1] (2003); *see also Cash Register Sales,* 62 S.W.3d at 281; *Escalona,* 712 S.W.2d at 824. Therefore, the UEFJA provision that a filed foreign judgment is subject to the same procedures, defenses, and proceedings for vacating a Texas judgment refers to the procedural devices available to vacate a Texas judgment. *See* Dorsaneo, 9 Tex. Litigation Guide § 134.04[1]. It cannot mean that the judgment can be vacated for any reason sufficient to support a traditional motion for new trial. *See id.; see also Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985) (grant of new trial "in the interest of justice and fairness"); *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 594 (Tex.1986) (recognizing grant of new trial allowed if evidence is factually insufficient to support verdict);

service of process was inadequate under the rules of the sister state; or (2) the sister state's exercise of in personam jurisdiction offends the due process of law. *Cash Register*

*Sales,* 62 S.W.3d at 281; *Markham v. Diversified Land & Exploration Co.,* 973 S.W.2d 437, 439 (Tex.App.-Austin 1998, pet. denied).

Tex.R. Civ. P. 327 (allowing grant of new trial upon proof of jury misconduct).[7]

 Nevertheless, because a motion to vacate has been analogized to a motion for new trial, we will apply the abuse of discretion standard recognizing, however, that the law required the trial court to give full faith and credit to the Georgia judgment unless Oilfield established an exception. *See Walker*, 827 S.W.2d at 840 (holding trial court has no discretion in determining the applicable law); *Nat'l Collection Serv.*, 1996 WL 132240, at *3–6 (concluding trial court abused its discretion by striking filed foreign judgment because debtor failed to present clear and convincing evidence to overcome presumption of validity). We acknowledge that determination of whether Oilfield established an exception to full faith and credit generally involves a factual inquiry, not resolution of a question of law. *See Reading &*

*Bates Const. Co.*, 976 S.W.2d at 713. However, the trial court also has no discretion in applying the law to the established facts. *See Walker*, 827 S.W.2d at 840. Therefore, we will review the record to determine whether the trial court misapplied the law to the established facts in concluding that Oilfield established an exception to full faith and credit.[8]

#### C. ANALYSIS

 Oilfield claims it satisfied three exceptions to full faith and credit of the Georgia judgment: (1) it is interlocutory and, thus, not final; (2) it is subject to modification under Georgia procedural law regarding service of motions and the setting aside of invalid judgments; and (3) it was procured through extrinsic fraud.[9]

#### 1. FINALITY

 First, Oilfield claims that the Georgia judgment is not final on its face

---

7. Unlike a motion for new trial, a challenge to enforcement of a foreign judgment is a collateral attack, and the merits of the original controversy may *not* be challenged. *See Cash Register Sales*, 62 S.W.3d at 281; *Russo*, 105 S.W.3d at 46–47 (holding judgment debtor's claims that Ohio judgment was supported by insufficient evidence and barred by collateral estoppel and res judicata were impermissible collateral attacks on the merits of the judgment, not recognized exceptions to full faith and credit).

8. Because the trial court did not specify the grounds on which it vacated the judgment, we will consider whether Oilfield satisfied any of its proffered exceptions.

9. Oilfield raised only one exception in its original motion to vacate. However, it raised additional exceptions in its supplemental motion. Mindis argues that the supplemental motion is a nullity because it was filed more than thirty days after Mindis filed the Georgia judgment. The supplemental motion to vacate was indeed untimely. *See* Tex.R. Civ. P. 329b(b) (providing amended motion for new trial may be filed, without leave of court, before a motion for new trial is overruled *and*

within thirty days after order complained of is signed); *Voth v. Felderhoff*, 768 S.W.2d 403, 412 (Tex.App.-Fort Worth 1989, writ denied) (citing *Baker v. Wal–Mart Stores, Inc.*, 727 S.W.2d 53, 55 (Tex.App.-Beaumont 1987, no writ) (per curiam); *L.B. Foster Co. v. Glacier Energy, Inc.*, 714 S.W.2d 48, 48–49 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.); *Lind v. Gresham*, 672 S.W.2d 20, 22 (Tex.App.-Houston [14th Dist.] 1984, no writ)). However, the Texas Supreme Court recently clarified the effect of an untimely amended motion for new trial. If the trial court denies a new trial, the belated motion is a nullity and supplies no basis for consideration upon appeal of grounds which were required to be set forth in a timely motion. *See Moritz v. Preiss*, 121 S.W.3d 715, 720–21 (2003) (citing *Jackson v. Van Winkle*, 660 S.W.2d 807, 808 (Tex. 1983); *Kalteyer v. Sneed*, 837 S.W.2d 848 (Tex.App.-Austin 1992, no writ)). However, the trial court may in its discretion consider grounds raised in an untimely motion and grant a new trial under its inherent authority before it loses plenary power. *See id.* Therefore, the trial court could consider the grounds raised in Oilfield's untimely supplemental motion because it granted the motion to vacate while it retained plenary power.

because judgment was not also taken against OMC Services, the bankrupt defendant-seller. We disagree. There is no evidence or authority suggesting the judgment was not final.

The judgment is titled, "Final Order and Judgment as to Defendants OMC Control, Ltd. and Oilfield Motor & Control, Inc." Oilfield contends the judgment is not final and is subject to modification under Georgia law because it does not recite "there is no just reason for delay." In Georgia, a court is required to make an express determination that there is no just reason for delay before entering a judgment "upon multiple claims or involving multiple parties." O.C.G.A. § 9–11–54(b) (1993).[10] We acknowledge that the Georgia judgment does not incorporate the words "there is no just reason for delay." However, according to the record, the Georgia trial judge acknowledged that OMC Services was bankrupt and stayed, but he refused to stay proceedings against Oilfield and Controls. He also expressly directed the clerk *instanter* to issue a writ of *fieri facis* (Georgia's equivalent of a writ of execution) against Oilfield and Controls. *See Markham*, 973 S.W.2d at 439 (recitals in foreign judgment are presumed to be valid). The exact finality and delay language contained in O.C.G.A. § 9–11–54(b) is not required in a judgment involving some, but not all, multiple parties in Georgia. *Cherry v. Hersch*, 193 Ga.App. 471, 388 S.E.2d 64, 65 (1989) (holding that "Final Judgment" order that did not recite exact language of O.C.G.A. § 9–11–54(b) made express provision and showed by its language a clear intent that the order be

final and, therefore, appealable as to two of the four defendants).

■ Additionally, the Georgia trial court granted Mindis's unopposed motion for Oilfield to file a supersedeas bond. We presume that in Georgia, as in Texas, an interlocutory judgment cannot be enforced by execution, and an appealing party would not be ordered to file a supersedeas bond for an interlocutory judgment. *Fender v. Delta Mud & Drilling Co.*, 697 S.W.2d 655, 657 (Tex.App.-Tyler 1985, writ ref'd n.r.e.) (holding that in the absence of proof of laws by judicial notice requested, the laws of another state are presumed to be the same as Texas). During oral argument, counsel for Oilfield conceded that Mindis could execute on the Georgia judgment in Georgia.

Further, Oilfield appealed from the Georgia judgment. In Georgia, a party may appeal an adverse summary judgment either before or after a final judgment. *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 248 S.E.2d 641, 642 (1978). However, nothing in the record, particularly nothing in Oilfield's Notice of Appeal, suggests that Oilfield complied with Georgia procedural rules for appeal of an interlocutory judgment, or otherwise characterized its appeal as being from an interlocutory judgment. *See id.;* O.C.G.A. § 9–11–54(b).[11]

Accordingly, the Texas trial court misapplied Georgia law to the established facts if it concluded that the Georgia judgment was interlocutory, and, thus, not final.

**2. NOT SUBJECT TO MODIFICATION UNDER GEORGIA LAW**

---

**10.** Oilfield's reliance on *MARTA v. Federick*, 187 Ga.App. 696, 371 S.E.2d 204 (1988) is misplaced and not persuasive. That case involves an attempt to make a bad faith claim under O.C.G.A. § 33–34–6(b)(c); it is not a determination that a judgment should be set aside because it was not final having been

entered against fewer than all the parties and claims under O.C.G.A. § 9–11–54(b). Further, it does not involve the stay of a bankrupt defendant.

**11.** As previously noted, the appeal has since been dismissed.

▬ Oilfield further asserts that the Georgia judgment should not be given full faith and credit because it is subject to being modified or set aside under Georgia law. Under the Georgia Rules of Civil Practice, a party may move to set aside a judgment based on (1) lack of jurisdiction over the person or the subject matter; (2) fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or (3) a nonamendable defect which appears upon the face of the record or pleadings. O.C.G.A. § 9–11–60(d) (2003). Oilfield complains that it did not receive proper notice of the motion for summary judgment because Mindis named only one of the three seller-defendants—OMC Services—in the certificate of service. Oilfield asserts that the judgment is subject to being set aside under O.C.G.A. § 9–11–60(d)(3) because the allegedly faulty certificate of service is a nonamendable defect that appears upon the face of the pleadings.[12] We disagree.

▬ Before he withdrew, Oilfield's original Georgia attorney filed a document that designated one address for future contact with all three defendant-sellers. His Notification Certificate and Request for Order Permitting Withdrawal as Attorneys of Record stated:

The last known address of the Clients [OMC Services, Controls, and Oilfield] was 6718 Northwinds, Houston, Texas 77041 and the last known telephone number was (713) 983–8600. Future notices may be served upon the Client at this address, which was the only address ever provided to the Attorneys, and to the best of these attorneys' knowledge is still a valid address. These attorneys have directed correspondence to the Clients to the attention of Mr. Richard Montegut and Mr. Paul Remback, based on these attorneys' understanding that they are corporate officers.

See UNIF. SUP.CT. R. 4.3 (requiring attorney withdrawing in Georgia to prepare a written notification certificate providing, among other items, the client's last known address).[13]

Mindis mailed the motion for partial summary judgment to this one address provided for all three defendants. Under Georgia law, a motion may be served on a party by mailing it to the party at its last known address, and service by mail is complete upon mailing. See O.C.G.A. § 9–11–5(b) (2003). Although Mindis did not name Oilfield in the certificate of service, failure to show proof of service does not affect the validity of service under Georgia law. See id. Accordingly, any defect in the certificate of service was amendable[14] because Oilfield was served with the motion for summary judgment at its last known address according to the court rec-

---

12. Mindis argues that Oilfield may not raise the allegedly defective service of the motion because a judgment debtor may only attack a foreign judgment based on defective *service of process*. A debtor may challenge the jurisdiction of a sister state to render a foreign judgment by demonstrating service of process was inadequate under the rules of the sister state. *See Cash Register Sales*, 62 S.W.3d at 281. However, Oilfield relies on the allegedly defective service of the motion to argue the judgment is subject to being set aside under Georgia law—a separate challenge to full faith and credit from a jurisdictional challenge.

13. The court subsequently entered its order permitting Oilfield's attorney to withdraw. Under Georgia law, a court completes its involvement with an attorney's withdrawal when it issues an order permitting the attorney to withdraw. *See Dunn v. Duke*, 216 Ga.App. 829, 456 S.E.2d 65, 68 (1995).

14. In this vein, Oilfield's reliance on *TMS Ins. Agency, Inc. v. Galloway*, 205 Ga.App. 896, 424 S.E.2d 71 (1992) is unpersuasive. In *TMS*, contrary to the court's order, only former counsel, not the client, was sent notice of a hearing on the motions at issue; thus, this lack of notice constituted a nonamendable

ords.[15] *See Montgomery v. USS Agri Chemical Div.*, 155 Ga.App. 189, 270 S.E.2d 362, 365 (1980) (holding when service of process was valid, defective return of service could be amended "to speak the truth").

■ Further, Oilfield never brought the alleged defect to the Georgia trial court's attention so that it could be amended. In particular, Oilfield never moved the Georgia court to set aside the summary judgment while it was interlocutory. In fact, Oilfield never brought any alleged defenses to the Georgia court's attention before the summary judgment became final. In August 2001, Oilfield's second Georgia counsel, Mr. Schroeder, filed a Notice of Appearance "for the limited purpose of filing a Motion for Continuance, and Memorandum of Law in Support

thereof"—and nothing more. Mr. Schroeder then argued the motion for continuance at the first trial setting on damages. Mr. Schroeder appeared again at the second trial setting on damages to advise the court of the Notice of Bankruptcy filed by OMC Services and to request a stay as to all defendants (even though he stressed he did not represent the co-defendants).[16] In both instances, Oilfield had an opportunity to seek relief in the trial court, address the allegedly defective certificate of service, and present any alleged defenses before final judgment was rendered.[17] Therefore, any defect could have been amended before the final judgment was rendered, and would not subject the judgment to being set aside under Georgia law.[18]

Accordingly, the trial court misapplied the law to the established facts if it found that the judgment is subject to being mod-

defect under O.C.G.A. § 9–11–60(d). *Id.* at 72. In contrast, here, the motion for summary judgment was sent to the client at the last known address on file with the court.

15. Oilfield claims that this was not its address because its original counsel did not provide the proper address when he withdrew. However, Oilfield admits it was OMC Services' address. The certificate of service was addressed to Richard Montegut at OMC Services. Mr. Montegut was also a vice president and fifty-percent shareholder of Oilfield. Notice to a vice president, Mr. Montegut, would be imputed to the corporation, Oilfield. *See Brown v. Cooper*, 237 Ga.App. 348, 514 S.E.2d 857, 863 (1999). Oilfield also claims it had no notice of its original attorney's withdrawal. However, the attorney directed the withdrawal notice to Mr. Montegut at the Northwinds address. Accordingly, notice to Mr. Montegut of the withdrawal constituted notice to Oilfields. In addition, according to the affidavit of its president, Oilfield knew that its attorney communicated mainly with OMC Services—not with Oilfield—because the main allegations were against OMC Services. Under Georgia law, it was Oilfield's obligation to monitor the litigation to which it was a party, or suffer the consequences. *See Dunn*, 456 S.E.2d at 68. Finally, in the with-

drawal notice Oilfield was informed of its burden to keep the court informed regarding where pleadings may be served. There is no evidence that Oilfield provided the court with any alternate address before Mindis served its motion for summary judgment at the address mentioned in the withdrawal notice.

16. Despite Oilfield's complaint about the service of the motion, it clearly was aware of the interlocutory summary judgment before final judgment was rendered. Yet, Oilfield did not assert lack of notice, or any defenses, during the nine-month period between the interlocutory summary judgment and the final judgment.

17. Even a *nonamendable* defect will not subject a judgment to being set aside under Georgia law if it could have been presented to the trial court before judgment was rendered. *See Marshall v. Marshall*, 257 Ga. 494, 360 S.E.2d 572, 574 (1987) (holding absent some compelling reason, motion to set aside under O.C.G.A. § 9–11–60(d) based upon grounds which the movant knew or in the exercise of reasonable diligence should have known at the time of the judgment will not be granted).

18. Oilfield also never moved the Georgia court to set aside the final judgment, and its

ified or set aside under Georgia law based on a nonamendable defect.

### 3. Not procured by extrinsic fraud

Finally, Oilfield argues the Georgia judgment should not be given full faith and credit because it was procured by extrinsic fraud due to the defective certificate of service. We disagree. While the certificate of service may not be in strict compliance with Georgia rules of civil procedure, non-compliance does not constitute fraud on Mindis's part considering Oilfield's own attorney gave only one address for all three defendant-sellers and Mindis served the motion for summary judgment on Oilfield at this address. *See Looney v. M-Squared, Inc.*, 262 Ga.App. 499, 586 S.E.2d 44, 49 (2003) (stating elements of fraud are a false representation or omission of material fact, scienter, intent to induce the other party to act or refrain from acting, justifiable reliance, and damages). Further, the fact that Oilfield never objected to the defective certificate of service, or presented any defenses, in the Georgia trial court before final judgment was rendered negates that the judgment

was procured through extrinsic fraud. *See Jackson v. Jackson*, 254 Ga. 280, 328 S.E.2d 733, 735 (1985) (defining extrinsic fraud as fraud which prevents a party from having a trial, or from presenting all of its case to the court, or which operates, not upon matters pertaining to the judgment itself, but to the manner in which it is procured). Therefore, the trial court misapplied the law to the established facts if it found that the judgment was procured through extrinsic fraud.[19]

In sum, the trial court misapplied the law to the established facts if it found that Oilfield established an exception to full faith and credit. Accordingly, the trial court abused its discretion by vacating the domesticated Georgia judgment. We sustain Mindis's second and third issues.[20]

We reverse the trial court's order vacating the domesticated Georgia judgment and order the judgment to be reinstated under the provisions of the UEFJA.

Georgia appeal from the judgment has been dismissed "as abandoned." Any ruling by the Georgia Court of Appeals in a case is binding in all subsequent proceedings in that case in the lower court. *See* O.C.G.A. § 9–11–60(h) (2003). However, there is Georgia authority that dismissal of an appeal for procedural reasons, as opposed to disposal on the merits, will not bar a subsequent motion to set aside. *See Giles v. Vastakis*, 262 Ga.App. 483, 585 S.E.2d 905, 906–07 (2003). Further, a party generally has three years from entry of a judgment to move the trial court to set it aside. *See* O.C.G.A. § 9–11–60(f) (2003). On the other hand, if in the exercise of due diligence, a party could have discovered the ground for setting aside a judgment and raised it on appeal, it will not be excused from the exercise of such diligence. *See Marshall*, 360 S.E.2d at 573–74 (reversing trial court's setting aside May 1986 judgment because motion not filed until December 1986, there had been no appeal, and no ground was

raised in the motion which could not have been asserted in an appeal). Nevertheless, we need not consider the effect of Oilfield's appeal being dismissed on a subsequent motion to set aside because any defect was amendable as a matter of law and would not subject the judgment to being set aside.

19. Extrinsic fraud is an independent exception to full faith and credit, but fraud is also a ground for setting aside a judgment under O.C.G.A. § 9–11–60(d). Nevertheless, the judgment was not procured by any fraud, much less extrinsic fraud, so Oilfield's fraud argument does not support either exception.

20. In its fourth issue, Mindis contends that the trial court exceeded its authority in also vacating the judgment on behalf of Controls because Controls did not file a motion to vacate. However, our ruling that the trial court abused its discretion by vacating the judgment renders this issue moot.