

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00022-CV

---

IN RE JUAN OLTIVERO

---

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B9545-1211-A, Honorable Kregg Hukill, Presiding

---

January 7, 2025

MEMORANDUM OPINION

Before QUINN, C.J. and PARKER and YARBROUGH, JJ.

This appeal from a summary judgment concerns the question of who receives the $75,000 deposited into the court's registry, apparently by Prudential Assigned Settlement Services Corporation (PASSCorp).[1]  The deposit represented one annuity payment originally due Clayton Curtis as part of his settlement of a personal injury lawsuit (Curtis payment).  Curtis assigned the payment to Stratcap Investments. Inc., which assignment a trial court in the State of New York approved.  Allegedly, Stratcap assigned the payment to Genex Capital Corporation, who assigned it to Edwin C. Leonard, Jr., IRA, who

---

[1] The sum was interpleaded into the court's registry.  Yet, the record before us does not contain those pleadings.

assigned it to New England Annuity Associates (NEAA), who assigned it to the Mary Tremble Family Trust, and who ultimately reassigned it to NEAA. So, the latter thought itself entitled to the deposit. Genex disagreed and claimed it had the right to it. The two then filed cross motions for summary judgment. The trial court denied that of NEAA and granted that of Genex. It entered a final judgment ordering, among other things, that Genex "shall recover judgment against NEAA in the amount of $75,000.00 . . ." and awarding attorney's fees to Genex.

NEAA appealed. We reverse and remand.

### Standard of Review

The applicable standard of review is discussed in *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist*., 624 S.W.3d 535, 540 (Tex. 2021) and *Rekerdres & Sons Ins. Agency, Inc. v. Hegar*, 611 S.W.3d 88, 95 (Tex. App.—Amarillo 2020, pet. denied). We apply it here, and begin with Genex's motion for summary judgment.

### Genex Summary Judgment

To reiterate, Genex sought to recover the deposit in question through its motion for summary judgment. It proffered two grounds purportedly entitling it to relief. The first concerned the availability of a declaratory action as a means to collaterally attack a final, non-appealable consent order executed in 2021. The second involved application of the terms underlying that consent order as a means of adjudicating the dispute at bar.

Regarding the collateral attack, NEAA filed an amended petition to void the consent order. The 242nd Judicial District Court of Castro County executed that consent order in February 2021 as part of this cause. Through it, the court ordered "Prudential . . . [to] forward the remaining Assigned Payments within 7 days of the date due in the manner set forth in the parties' Stipulation ("Stipulation"), by check made payable to Genex Capital

2

Corporation[] c/o GoldStar Trust Company Account #601250, at P.O. Box 719, Canyon, TX 79015 (the "Designated Address")."[2]  Though the "Assigned Payments" alluded to a structured settlement payment assigned by Juan Oltivero, the decree purported to encompass foreign assignments of structured settlements executed in causes unrelated to Oltivero and approved by judges outside Texas.  Attempt was made to describe those foreign assignments in paragraph 11 of the consent order.

Paragraph 11 alluded to them as "other qualified structured settlement assignments more particularly identified, but not limited to, those in Exhibit "A" attached to the Stipulation (collectively the "Other Assignments")."  And, the trial court expressly "approve[d] the parties' resolution of their dispute concerning the Other Assignments as memorialized in the Stipulation."  So, apparently, the Other Assignments were diverted from Stratcap c/o Security Title to "Genex Capital Corporation[] c/o GoldStar Trust Company Account #601250, at P.O. Box 719, Canyon, TX 79015 . . . ."  And, according to Genex, the $75,000 Curtis payment was one of the "Other Assignments."

NEAA amended its original petition in intervention.  Through that amended pleading, it not only asserted its claim to the sum (as an assignee) but also sought judgment declaring void the 2021 consent order upon which Genex based its claim to the $75,000.  That resulted in Genex's urging, as its first summary judgment ground, that "'[d]eclaratory relief is not available for the interpretation of a prior judgment entered by that or any other court.'"  That quote came from *Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 140 (Tex. App.—Tyler 2008, no pet.).  In uttering the

---

[2] NEAA was not a party to the consent decree or stipulation.

statement, the *Rapid* panel cited *Martin v. Dosohs I Ltd.*, 2 S.W.3d 350, 353 (Tex. App.—San Antonio 1999, pet. denied).

Indeed, the panel in *Martin* voiced the rule mentioned in *Rapid Settlement*. *Martin*, 2 S.W.3d at 354. It further described the rule as the majority position in Texas. *Id.* at 353-54. And, it chose to "follow the majority in Texas and hold that declaratory relief is an inappropriate vehicle for interpreting previous judgments". *Id.* at 354; *but see Mungia v. VIA Metro. Transit*, 441 S.W.3d 542, 547 (Tex. App.—San Antonio 2014, pet. denied) (involving a bill of review and action for declaratory relief stating that a void default judgment may be collaterally attacked through an action to declare the judgment void); *Wagner v. D'Lorm*, 315 S.W.3d 188, 194-95 (Tex. App.—Austin 2010, no pet.) (to same effect).

Yet, whether a declaratory action is an appropriate means to collaterally attack a purported void judgment is non-determinative here. Irrespective of the answer to that question, Genex was obligated to prove, as a matter of law, its entitlement to the deposit. And, it based its claim to the monies on the 2021 consent order. Allegedly, "there is no justiciable controversy as to whether Genex is entitled to receive payment from Prudential under the court orders that NEAA challenges." This was so, according to Genex, since: 1) "the issue of legal title to the payment is not actually before this Court"; 2) "the present issue of who is entitled to receive the Disputed Payment (notwithstanding any title dispute) has already been resolved by prior judicial decision"; and 3) "[t]he New York Order and this Court's [2021] Consent Order each establish that Genex, by way of its assignment from its agent Stratcap, is already entitled to receive the Disputed Funds." In other words, Genex claims the deposited funds, and the right to receive them, as opposed to who actually owns them, was adjudicated via the 2021 Consent Order. And, it

4

continued, that question was so adjudicated through the passages in the Consent Order specifying that the "Other Assignments" were to be "made payable to Genex Capital Corporation c/o GoldStar Trust Company Account #601250, at P.O. Box 719, Canyon, TX 79015."

Yet, a material question of fact exists as to whether the Curtis payment fell within the ambit of "Other Assignments." First, verbiage in the consent order described the "Other Assignments" as "other qualified structured settlement assignments more particularly identified, but not limited to, those in Exhibit 'A' attached to the Stipulation . . . ." The summary judgment record contains no "Exhibit 'A.'" Nor was it attached to the consent order, as that document appears in the appellate record. Similarly missing is other competent evidence of record illustrating that the Curtis payment was either 1) part of "Exhibit 'A'" or 2) one of the "other qualified structured settlement assignments" outside the scope of "Exhibit 'A'".

Second, though the Consent Order also provided criteria purporting to describe the "Other Assignments" which may not be "limited to, those in Exhibit 'A,'" those criteria do not encompass the Curtis payment. For instance, paragraph 12 states that "Genex is identified as the payee and Prudential is identified as the issuer *for each of the cases that collectively comprise the Other Assignments.*" (Emphasis added). We read this as indicating that within the "Other Assignments," Genex is the named payee. So, for the Curtis payment to be an "Other Assignment" within the scope of the consent order, the court order approving the assignment of the Curtis payment must name Genex as payee. It did not.

Furthermore, paragraph 14 of the consent order also purports to define the category of "Other Assignments." It states: "*[t]he court orders approving the Other*

***Assignments***, and the stipulations accompanying same, direct Prudential to issue payments ***in the cases that comprise the Other Assignments*** to Genex care of servicing agents purportedly for the benefit of Genex." (Emphasis added). But, again, the New York court order approving the Curtis payment did not do that. Rather, it specified that "Prudential shall forward the Assigned Payments, within 7 days of the date due, payable to Stratcap Investments, Inc., c/o Security Title Agency, [] at P.O: Box 33279, Phoenix, AZ . . . ."

Simply put, the Curtis assignment may well be one of the "Other Assignments," but the record before us fails to establish that fact. Because the burden lay with Genex to prove its entitlement to summary judgment as a matter of law and part of that burden included proving the Curtis payment fell within the scope of "Other Assignments," the trial court erred in granting the party summary judgment.

One other matter precludes us from affirming the trial court's judgment. It concerns the trial court's jurisdiction to modify the New York decree. Our United States Constitution requires each state to give full faith and credit to the public acts, records, and judicial proceedings of every other state. U.S. CONST. art. IV, § 1; *Dalton v. Dalton*, 551 S.W.3d 126, 135 (Tex. 2018). This means a valid judgment from one state must be enforced in other states regardless of the laws or public policy of the other states. *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992); *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (op. on reh'g) (stating that "Texas is required to enforce a valid judgment from another state"). Consequently, a Texas trial court lacks jurisdiction to simply set aside another state's judgment. *Moreno v. Halperin*, No. 05-20-00858-CV, 2021 Tex. App. LEXIS 9879, at *6-7 (Tex. App.—Dallas Dec.14, 2021, pet. denied) (mem. op.). This

6

prohibition would seemingly include modifications of that judgment, as well, for if modified the original is not being afforded full faith and credit.

Of course, there are statutory procedures which vest Texas courts with jurisdiction over foreign judgments. They are found in § 35.001 *et seq.* of the Texas Civil Practice and Remedies Code. Once complied with, that foreign judgment becomes tantamount to a Texas judgment. *Bahr v. Kohr*, 928 S.W.2d 98, 100 (Tex. App.—San Antonio 1996, writ denied) (stating that the "filing of a valid foreign judgment not only initiates the enforcement proceedings, but also automatically creates an enforceable Texas judgment"). As a Texas judgment, it is also subject to modification in the same ways a Texas judgment is so subject. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(c) (stating that a "filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed").

Here, the Castro County district court attempted to modify the New York order by renaming the entity entitled to receive the Curtis payment. When asked if the former district court had jurisdiction to alter an order of the latter, Genex admitted it did not. Genex then asserted that merely the servicing agent was changed through the consent order; consequently, no actual modification occurred. This was purportedly so because the New York decree "mandated Prudential 'will' make [] payment to a new address if the 'Designated Address' is no longer valid without further order of the court." The "designated address" allegedly became invalid because "Security Title was no longer in business and the address was no longer valid." We find this representation problematic, though, for reasons we now explain.

7

In approving the reassignment of the Curtis payment from Stratcap to a third-party, the New York court mandated that "the Assigned Payments **will continue to be serviced by Stratcap** (or an agent on its behalf)." (Emphasis added). That is, "the Assigned Payments will continue to be made by Prudential **to Stratcap at the Designated Address only**, regardless of any Reassignment." (Emphasis added). Yet, it further wrote that "if for reasons beyond the control of Stratcap, or due to Stratcap being merged with or acquired by another individual or entity, or for traditional address change purposes the Designated Address is no longer valid (i.e., if Stratcap moves or for other reasons the Designated Address is no longer a viable address for Stratcap to receive payments), Prudential will make the Assigned Payments **to a new address**." (Emphasis added). Then came the directive that "[n]otwithstanding the foregoing, the parties' Stipulation will remain binding and **fully enforceable against Stratcap**." (Emphasis added). Affording these passages their ordinary meaning, we read them as permitting for only a change in the "designated address" to which payments were to be sent. They do not provide for an actual change in servicing agent. Stratcap remained bound to service the payments, regardless of whether it owned the payment. Yet, the Castro County district court removed Stratcap as servicing agent and substituted Genex c/o Goldstar Trust Co. in its stead. More than a mere change in "designated address" happened; the court modified the servicing agent itself.[3] So, accepting Genex's concession about the Castro County court lacking jurisdiction to "modify" the New York order, then the change wrought in servicing agent was beyond the court's power.

---

[3] Within the consent order, Genex seemingly acknowledged both that and the need to obtain approval from the court which permitted an "Other Assignment." Paragraph 15 of the Consent Order evinces as much. There, Genex represented: "Insurers have been advised **by Genex** that it may in the future have to seek a redirection of some or all of the payments that comprise the Other Assignments **to new servicing agents.**" (Emphasis added).

We do not ignore Genex's other contention that Stratcap "disclaimed any interest in" the Curtis payment. That purported disclaimer appeared in a letter from Stratcap's president. The latter wrote: "I hereby confirm that Stratcap disclaims any interest in and to the $75,000.00 that Prudential Assigned Settlement Services Corporation has been ordered by Judge Kregg Hukill to tender and deposit into the Registry of the Court in Cause No. B9545-1211 pursuant to the court order entered on April 21, 2022." By making that disclaimer, it somehow freed the Castro County district court to replace Stratcap as servicing agent, according to Genex. Interestingly, though, the letter said nothing about Stratcap's relinquishing its obligations as servicing agent for the Curtis payment. Nor did the New York order contain anything authorizing Stratcap to unilaterally eschew its servicing agent duties. Again, the New York court ordered that "[n]otwithstanding the foregoing [matter about changing the designated address], the parties' Stipulation will remain binding and fully enforceable against Stratcap." As said earlier, Texas courts generally accord foreign judgments full faith and credit. They cannot simply be ignored. This precludes us from affording weight to Genex's interpretation about the effect of Stratcap's disclaimer.

In sum, Genex failed to prove, as a matter of law, its entitlement to summary judgment and the $75,000 Curtis payment. Thus, we reverse it. But another matter remains. It concerns attorney's fees. Genex moved for same under § 37.009 of the Texas Civil Practice and Remedies Code, and the trial court awarded the entity fees exceeding $119,000.

Per § 37.009, a trial court may award either party reasonable and necessary attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Timbercreek Canyon Prop. Owners Ass'n v. Fowler*, No. 07-14-00043-CV, 2015 Tex.

App. LEXIS 8460, at *18 (Tex. App.—Amarillo Aug. 12, 2015, no pet.) (mem. op.). Genex benefitted from that statute. Our having reversed the final judgment favoring it, though, leads us to also reverse the fee award, however. *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (holding that an appellate court may reverse an award of fees under the Declaratory Judgment Act when it reverses the underlying declaratory judgment for the award may no longer be just and equitable).

### NEAA Summary Judgment

As previously mentioned, NEAA also moved for summary judgment. Allegedly, it proved its entitlement to "receive the Disputed Payment." We overrule the issue.

Returning to the New York order, we reiterate its directive. The Curtis payments were originally assigned to Stratcap. So too were they to be sent to "Stratcap Investments, Inc., c/o Security Title Agency." This remained true even if Stratcap reassigned the payment to a third party. So, affording the New York order full faith and credit precludes entry of summary judgment declaring NEAA entitled to "receive" the $75,000 payment.

Accordingly, we reverse the final judgment of the trial court and remand the cause.

Brian Quinn
Chief Justice

10