Reversed and Remanded and Majority and Dissenting Opinions filed January
29, 2008








Reversed and Remanded and Majority and Dissenting
Opinions filed January 29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00078-CV

_______________

 

MARK A. CANTU, Appellant

 

V.

 

HOWARD S. GROSSMAN, P.A., Appellee

                                                                                                                                               


On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 05-64630

                                                                                                                                               


 

D I S S E
N T I N G   O P I N I O N

I
respectfully disagree with the majority=s methodology, analysis, and
conclusion.








The
central issue in this case is whether Texas=s general venue statute applies to a
proceeding to enforce a foreign judgment under the Uniform Enforcement of
Foreign Judgments Act, as adopted in Texas.  Rather than look to the plain and
unambiguous language of the Texas venue statute to answer this question, the
majority looks to case law from other jurisdictions (with different venue
provisions) and concludes that the Texas venue statute applies.  An analysis of
the issue under the traditional method yields the opposite result.  Under our state=s unambiguous venue statute, a
proceeding under the Uniform Enforcement of Foreign Judgments Act is not
subject to a venue challenge.

Background








After
years of litigation in Florida in which appellant Mark A. Cantu was first a
nonparty involved in discovery and then a defendant, a Florida trial court
rendered two money judgments against him and in favor of appellee Howard S.
Grossman, P.C.  Cantu appealed the first judgment.  The Florida intermediate
court of appeals affirmed that judgment and then denied Cantu=s motion for rehearing.  Both Florida
judgments became final by appeal.[1]  Grossman
sought to enforce the Florida judgments in Texas.  Under Texas law, Grossman
had two enforcement options: (1) comply with the Uniform Enforcement of Foreign
Judgments Act, Chapter 35 of the Texas Civil Practice and Remedies Code
(hereinafter AUniform Act@), deemed the Ashort-cut@ method by the Texas Supreme Court[2]
or (2) file a common-law action to enforce the Florida judgments.  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.001, et seq. (Vernon
1997); Mindis Metals, Inc. v. Oilfield Motor & Control, Inc., 132
S.W.3d 477, 483B84 & n.5 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied).  Grossman chose to comply with the Uniform Act,[3]
a
statute adopted in Texas and most other states (in various forms) to implement
the Full Faith and Credit Clause[4]
and to facilitate the interstate enforcement of judgments by providing a
summary procedure for a judgment creditor to enforce a judgment in an
expeditious manner. 

Each of
the Florida judgments is a Aforeign judgment@ under the Uniform Act.  The record
shows, and Cantu does not dispute, the operative facts demonstrating Grossman=s full compliance with the Uniform
Act.[5] 
Before the trial court=s plenary power expired, Cantu filed a motion to transfer
venue of the enforcement proceeding based on Texas=s general venue statute, which
provides in pertinent part:

Except as
otherwise provided by this subchapter or Subchapter B or C [which includes
allowance for other statutes prescribing permissive venue], all lawsuits
shall be brought:








(1) in the county in which all or a substantial part of the events or
omissions giving rise to the claim occurred;

(2) in the county of defendant=s
residence at the time the cause of action accrued if defendant is a natural
person;

(3) in the county of the defendant=s
principal office in this state, if the defendant is not a natural person; or 

           
(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the
plaintiff resided at the time of the accrual of the cause of action.  

Tex.
Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002)(emphasis
added); see also id. ' 15.038.             In his motion to transfer venue, Cantu
asserted that he resided in Hidalgo County, not Harris County.  Grossman does
not dispute this fact, but Grossman asserts that the general venue statute does
not apply.  The trial court agreed and denied Cantu=s motion to transfer venue.  Cantu
now appeals this ruling.  This court, concluding that the trial court erred,
holds the general venue statute applies and requires a venue transfer to
Hidalgo County.  For the reasons explained below, this court instead should
hold that the venue statute has no application to a proceeding to enforce a
foreign judgment under the Uniform Act.  Additionally, this court should
overrule Cantu=s other issues and affirm the trial court=s judgment. 

Methodology: The Traditional Approach








The
outcome of this case turns on the interpretation of two statutesCthe Uniform Act and the general venue
statute.  The court=s role in interpreting these statutes is to determine the
intent of the legislature.  The place to start is the text of the statute.  Cash
America Int=l Inc. v. Bennett, 35 S.W.3d 12, 19 (Tex. 2000) (AWhen interpreting a statute, we begin
with the words of the statute and give them their ordinary meaning.@); see also Consumer Product
Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051,
2056, 64 L.Ed. 2d 766 (1980) (AThe starting point for interpreting a statute is the language
of the statute itself . . . .@).  Under this traditional method of statutory construction,
the court=s analysis should focus first on the words the legislature used in the
venue statute and if the meaning is plain, the court should apply the statute
as written.  Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994). 
Today the court departs from this method of analysis and engages in a new
methodology in which it does not address or consider the operative words of the
venue statute.  Instead, the court bases today=s decision on what other courts in
other states with other venue provisions have done.  Unmoored from the wording
of the Texas venue statute, the majority erroneously concludes that this venue
statute applies to enforcement proceedings under the Uniform Act.  By its
express language, however, the Texas venue statute applies only to Alawsuits.@  Because an enforcement proceeding
under the Uniform Act is not a Alawsuit@ as that term is used in the general venue statute, the venue
statute does not apply.

Though
the court does not undertake an analysis of whether an enforcement proceeding
is a Alawsuit,@[6] the court implicitly concludes that
it is.  In reaching its conclusion, the court does not even mention the
statutory language limiting the venue statute=s application to lawsuits.  Because
the court does not perform a traditional statutory analysis, it misapplies the
general venue statute and reaches the wrong result.  Its ruling not only
ignores the plain meaning of the venue statute but also frustrates the dominant
purpose of the Uniform Act [7] and
undermines the legislature=s stated desire to achieve uniformity among the states that
have adopted the uniform law.








Analysis: The Meaning of the
Statutory Language

The
court should analyze this issue under the traditional method and in a way that
promotes legislative intent and purpose.  The court=s focus should be on the language of
the venue statute and whether the term Alawsuit@ encompasses an enforcement
proceeding under the Uniform Act.  If
an enforcement proceeding under the Uniform Act is not a Alawsuit,@ then the venue statute does not
apply. 

Is a Uniform Act
proceeding a Alawsuit@ under the general venue statute?

The word
Alawsuit@ is defined in various ways in both
legal[8] and non-legal
dictionaries.[9]  Many
dictionaries, including those that were current at the time the Texas
legislature enacted the venue statute, contain a definition of the word that
embodies as a necessary component a claim or cause of action,[10]
a feature that is not characteristic of an enforcement proceeding under the
Uniform Act.  The claim-component definition suggests that a Alawsuit@ is a proceeding but that not every
proceeding is a Alawsuit.@  








At the
time the Uniform Act is invoked, the Alawsuit@ is over and the judgment is final.[11] 
All that remains is its enforcement.[12]  Enforcement
of a judgment occurs, if at all, post-lawsuit.  Venue, by contrast,  is a
pre-trial concept.[13]  It refers
to the place or places in which plaintiffs may, or in some cases must, bring
their lawsuits; venue does not speak to the location in which a party asserts
post-judgment defenses or seeks to reopen, vacate, stay, enforce, or satisfy a
judgment.[14]  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.003; Moncrief, 1991 WL
258684, at *2 (holding that trial court did not err in denying judgment debtors= motion to transfer venue in
proceeding under Uniform Act because pre-trial matter of venue does not apply
to Uniform Act proceeding and because Uniform Act unambiguously allows filing
of foreign judgment in any court of competent jurisdiction in Texas).  These
post-judgment proceedings necessarily take place in the trial court that rendered
the judgmentCthe court in which the judgment creditor filed the foreign judgment,
which, under the Uniform Act, may be any court of competent jurisdiction in
Texas.[15]  








No court
has ever applied Texas=s venue statute to a post-judgment proceeding or held that a
post-judgment proceeding is a Alawsuit@ within the meaning of that statute, and the majority does
not explain how legislative intent is honored by doing so in this instance. 
The legislature=s intent was to provide a summary procedure for the
enforcement of foreign judgments B a speedy alternative to filing a
lawsuit to enforce the judgment of a  sister state.  In holding that an
enforcement proceeding under the Uniform Act is a Alawsuit,@ the majority seems to have blurred
the distinction between a Uniform Act proceeding and a common law action. 
Because the case under review is not a common law action, it should not be
analyzed as one. 








Under
the paradigm of the Uniform Act, a judgment creditor no longer has to file a
lawsuit to enforce the judgment of a sister state.  Instead, the Uniform Act
gives the option of a Ashort-cut@ around a common law action.  In equating a contested
enforcement proceeding under the Uniform Act with a lawsuit, the majority is
ignoring the clear distinction between a common law action to enforce a foreign
judgment and the Ashort cut method@ for enforcement outlined in the
Uniform Act.  See Don Docksteader Motors, 794 S.W.2d at 761. 
Though venue rights would be available under the common law method (which
requires the filing of a lawsuit), they are not available when a judgment
creditor seeks enforcement under the Uniform Act.  In holding that venue may be
asserted in either scenario, the majority is effectively turning back the clock
to pre-Uniform Act days, when the only means of enforcing a foreign judgment
was to file a lawsuit.  The legislature did not intend  for courts to treat
Uniform Act proceedings as common law actions for enforcement of a foreign
judgment. 

Viewed
in this context, it is not reasonable to apply a pre-trial concept like venue
to a post-judgment proceeding.  Nor is it reasonable to conclude that the term Alawsuit@ as used in this context would
encompass an enforcement proceeding.  

Under the unambiguous language of the
general venue statute, set forth in section 15.002 of the Texas Civil Practice
and Remedies Code,[16] that statute
applies to a Alawsuit@  brought by one or more plaintiffs asserting one or more claims against
one or more defendants based on events or omissions.  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a).  In some published cases,
parties unnecessarily have added procedural elements of lawsuits to enforcement
proceedings under the Uniform Act.[17]  However, a
judgment creditor is not required to do so, and Grossman did not do so in this
case.  Grossman, electing the short-cut method, followed precisely the
procedures the legislature outlined in the Uniform Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.001, et seq.  The
resulting proceeding had none of the indicia of a lawsuit. 













No Petition.  In Texas courts, a lawsuit is
brought by filing a petition.  See Tex.
R. Civ. P. 22; Travelers Ins. Co. v. Brown, 402 S.W.2d 500, 503
(Tex. 1966).  Grossman never filed a petition or any other pleading, nor was he
required to do so under the Uniform Act.[18] 
Because there are no pleadings in a Uniform Act proceeding, there is no
mechanism for applying Texas venue procedure.  In Texas, the parties= pleadings are used to establish the
venue factsCthe plaintiff pleads facts showing that venue is proper, and these facts
are then taken as true unless the defendant specifically denies these facts in
the defendant=s answer.  See Tex. R. Civ.
P. 97 (3); GeoChem Tech Corp. v. Verseckes, 962 S.W.2d 541, 543
(Tex. 1998).  The legislature=s decision to omit a pleading requirement from Uniform Act
proceedings strongly suggests that the legislature did not intend for the venue
statute to apply to these proceedings.[19] 
Likewise, the lack of any other indicia of a lawsuit, as demonstrated below, is
strong evidence that an enforcement proceeding under the Uniform Act is not a Alawsuit.@

No Citation or Service of Process.  In Texas, a party bringing suit
must request the clerk of court to issue citation and arrange for service of
citation and petition (or waiver thereof) on the defendants in the lawsuit. 
See Tex. R. Civ. P. 99B107.  The district clerk never issued
and Cantu was never served with any citation.  Because in an enforcement
proceeding, there is no petition or other instrument containing claims or
causes of action, Cantu was never served with any such pleading; rather, Cantu
received only what the legislature prescribedCa notice of filing of the foreign
judgments.[20] 








No Answer.  In Texas, a party against whom a
lawsuit has been brought must timely file a written answer to avoid the
rendition of a default judgment against it.  See generally Tex. R. Civ. P. 83-85.  Cantu never
filed any answer in the trial court.  Because Grossman followed all the
procedures of the Uniform Act, Grossman held two Texas judgments in the trial
court as of October 10, 2005, the date he filed the Florida judgments.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 35.003; Mindis Metals, Inc.,
132 S.W.3d at 483 (stating that when judgment creditor filed an authenticated
copy of a foreign judgment under the Uniform Act, A[t]he judgment became enforceable as
a Texas judgment on the date it was filed@).  When Cantu responded, there was
no point in filing an answer.  

No Claims.  In Texas, a party bringing suit
must state its claims sufficiently to give notice thereof to the defendant and
to demand the judgment that the party seeks based on those claims.  See Tex. R. Civ. P. 47; Tex. Civ. Prac. & Rem. Code Ann. ' 15.002 (referring to Athe county in which all or a
substantial part of the events or omissions giving rise to the claim occurred@ (emphasis added)); Tex. Civ. Prac. & Rem. Code Ann. ' 15.006 (stating that A[a] court shall determine the venue
of a suit based on the facts existing at the time the cause of action that
is the basis of the suit accrued@ (emphasis added)).  Grossman never
stated any claims or sought any relief in the trial court, nor did the Uniform
Act require him to do so.  See Harbison-Fischer Mfg. Co., Inc., 823
S.W.2d at 685 (concluding that the Uniform Act does not require pleadings or
evidence to enforce a final judgment).  Grossman, in accordance with the
Uniform Act, filed authenticated copies of the final Florida judgments into
which its claims already had merged.  In a Uniform Act proceeding, the judgment
creditor converts a foreign judgment into a Texas judgment that can then be
enforced against non-exempt assets of the judgment debtor when and if there are
such assets in Texas.  The Uniform Act requires that notice be given to the
judgment debtor.  Regardless of whether the judgment debtor chooses to
challenge the new Texas judgment in the trial court, the proceeding is never
one in which the trial court entertains claims against the judgment debtor.








No Trial or Other Disposition.  In Texas, when a party brings a
lawsuit and continues to prosecute it, the trial court eventually resolves the
litigation by dismissing the claims or by rendering a judgment, either after
trial or by some pre-trial disposition allowed under Texas procedure.  See
generally Tex. R. Civ. P. 301,166a. 
Under the Uniform Act, the trial court below could not have conducted a trial
or rendered judgment based on a pre-trial dispositive motion; the act that
opened the proceeding in the court below was the filing of two judgments that
immediately became Texas judgments.  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.003; Mindis Metals, Inc.,
132 S.W.3d at 483; Urso v. Lyon Fin. Servs., Inc., 93 S.W.3d 276, 279
(Tex. App.CHouston [14th Dist.] 2002, no pet.) (stating that A[a] properly filed foreign judgment
has the effect of initiating an enforcement proceeding and instantly rendering
a valid Texas judgment@).  Therefore, the only possible action the trial court could
have taken was to consider timely asserted post-judgment motions or bills of
review seeking to vacate the judgments.  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.003; Mindis Metals, Inc.,
132 S.W.3d 483.  








No Need for Trial Court to Assert In
Personam Jurisdiction.  After filing his motion to transfer venue, Cantu filed a post-judgment
instrumentCa motion for new trial, in which he sought to set aside the judgments
based on various grounds, including alleged violations of Cantu=s due process rights and an alleged
lack of personal jurisdiction.  In Texas, when a party files a lawsuit, the
defendant may assert a special appearance to contest personal jurisdiction if
the trial court=s exercise of personal jurisdiction over that defendant would
violate due process.  See Tex. R.
Civ. P. 120a; Moki Mac River Expeditions v. Drugg, 221 S.W.3d
569, 575 (Tex. 2007).  Although a judgment debtor may seek to vacate a judgment
filed under the Uniform Act by asserting that the court in the sister state
lacked personal jurisdiction to render judgment against the judgment debtor (as
Cantu asserted in the trial court below[21]),
it is no defense to enforcement that the court of the state in which the
judgment is filed (Texas) cannot assert personal jurisdiction over the judgment
debtor.[22]  Neither the
Uniform Act nor the United States Constitution require in personam jurisdiction
over the judgment debtor in the state in which a foreign judgment is filed.[23] 
If judgment debtors such as Cantu cannot assert a special appearance
challenging personal jurisdiction in a Uniform Act enforcement proceeding, then
it would be anomalous for the legislature to allow them to challenge venue.

These points amply demonstrate that
an enforcement proceeding under the Uniform Act lacks any of the indicia of a Alawsuit@ as that term is generally understood
in Texas jurisprudence.  Logically, one might reason that a proceeding that
does not Awalk, talk, or quack@ like a lawsuit is not a lawsuit.  See City of San Antonio
v. Hartman, 201 S.W.3d 667, 671 (Tex. 2006) (concluding that motion was a
motion for rehearing because it Awalked, talked, and quacked like a
motion for rehearing@).  Cantu, however, has convinced the majority that a
proceeding with no petition, citation, service of process, answer, claims,
trial or other disposition is nonetheless a Alawsuit.@ 








Although the majority does not
discuss or analyze the operative statutory language, it implicitly concludes
that a Uniform Act proceeding is a Alawsuit@ as that term is used in the general
venue statute.  This conclusion cannot withstand either contextual scrutiny (as
demonstrated above) or harmonization of the provisions of the general venue
statute with those of the Uniform Act, as demonstrated below.

AStatutory construction . . . is a
holistic endeavor.@  United Sav. Ass=n of Texas v. Timbers of Inwood
Forest Assocs.,
Ltd., 484 U.S. 365, 371, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740 (1988). 
Rather than relying on out-of-state cases not involving the Texas venue statute
to determine the applicability of the Texas venue statute, the court should
base its analysis on the statutory language and analyze the venue statute in
the context of the Uniform Act.  In doing so, the court should be guided by the
basic principle that the two statutes should be read as a harmonious whole,
with their individual components interpreted within their statutory context in
a manner that furthers the legislative purposes of both.  The court=s implicit conclusion that Alawsuit@ includes a post-lawsuit proceeding
not only ignores the context for proper application of the general venue
statute but also spoils the dominant legislative purpose of the Uniform ActCto facilitate the interstate
enforcement of judgments by providing a summary procedure for a judgment
creditor to enforce its judgment in an expeditious manner.  








By implicitly finding that the
summary procedure set forth in the Uniform Act is a Alawsuit,@ this court (1) effectively thwarts
any expeditious treatment of foreign judgments and (2) arms judgment debtors
with rights and dilatory tools neither intended by the legislature nor
supported by the plain language of the Uniform Act.  Nothing in the statute
suggests the legislature intended judgment debtors to have venue rights in a
post-judgment proceeding, especially one that is supposed to be a summary
procedure, i.e., a short, concise, and immediate proceeding that would
facilitate enforcement of judgments in an expeditious manner.[24] 
The majority does not explain the logic of injecting a dilatory plea and all
its trappings into what is supposed to be a Ashort-cut@ procedure.  Nor does the majority
explain how doing so furthers the legislative purpose of either statute. 

Moreover, in overriding the Uniform
Act=s summary procedure, the court
hinders rather than promotes uniformity among the states. By superimposing
Texas=s venue laws onto the Uniform Act,
judgment creditors seeking to enforce foreign judgments in this state will face
Texas=s unique venue scheme with its
distinct features that are not contained in any other states= versions of the Uniform Act. 
Neither the Texas legislature nor the legislatures of the other 48 states that
have adopted forms of this uniform statute require judgment creditors to comply
with the requirements of the Texas venue statute.  Today=s ruling makes enforcement of foreign
judgments in Texas different than in other places.  Thus, by making proceedings
under the Uniform Act subject to Texas=s venue provisions, the court
undermines rather than fosters uniformity among the states. 

In its reasoning, the majority
confuses decision making among courts with uniformity of statutes among the
states.  Uniformity is not achieved by adopting the reasoning of courts in
other states whose focus is on features unique to their states; rather,
uniformity is achieved by construing the terms of the common statute in a way
that will promote regularity and sameness in its application.  Superimposing
the Texas venue scheme onto the Uniform Act does not promote uniformity because
other states have not made the Texas venue scheme part of  their versions of
the Uniform Act.  Adding provisions that are not contained in the Uniform Act
promotes dissimilarity, not uniformity. 








The Uniform Act represents a
comprehensive legislative scheme distinctly applicable to the enforcement of foreign
judgments.  Today this court holds that those enforcing foreign judgments in
Texas B unlike anywhere else in the country B  not only must follow  the stated
provisions of the Uniform Act but also must comply with the Texas venue rules
which, as demonstrated below, conflict with the plain wording of the Uniform
Act.  The Texas legislature did not intend to upset the Uniform Act=s simple, straight-forward, and
consistent provisions by applying the Texas general venue statute to
enforcement proceedings.  By holding otherwise, the court ignores the Uniform
Act itself and thwarts its underlying purpose.  

This court should not adopt a
statutory interpretation of the general venue statute that frustrates both the
legislature=s desire for  uniformity among states and the dominant purpose of the
Uniform Act.  The unambiguous language of Chapter 15 (Venue) and Chapter 35
(the Uniform Act) shows that a proceeding under the latter is not a Alawsuit@ under the former.  Therefore, the
court errs in holding that the venue rules apply to Chapter 35 proceedings.

Even if venue
principles applied to an enforcement  proceeding under the Uniform Act, section
35.003 would constitute a permissive venue statute that would take precedence
over section 15.002.








Even if, contrary to the above
analysis, venue principles did apply to the filing of a foreign judgment under
the Uniform Act, section 15.002 would apply only if no other statute prescribes
permissive venue.  See Tex. Civ.
Prac. & Rem. Code Ann. '' 15.002, 15.038.  Grossman argues
that section 35.003 is a permissive venue statute.  The majority summarily
dismisses Grossman=s argument, apparently because section 35.003 does not
contain the word Avenue.@[25]  By attaching such importance to nomenclature, the
majority improperly elevates form over substance.  See, e.g.,
Phillips v. Beaber, 995 S.W.2d 655, 658 (Tex. 1999).  The word Ajurisdiction@ is found in section 35.003, and the
word Avenue@ is not; however, these words do not
have a talismanic effect in determining whether this statute is a permissive
venue statute or a jurisdiction statute.  See id. (stating that
statutory interpretation should not be mechanistic and should not elevate form
over substance).  Texas courts have found statutes to be venue statutes, even
though they contained the word Ajurisdiction@ and did not contain the word Avenue.@[26] 

Subject-matter jurisdiction refers to
a court=s power to decide a case, whereas
venue  refers to the proper or possible place or places for a lawsuit.  See
Radenovich v. Eric D. Fein, P.C. & Assocs., 198 S.W.3d 858, 860 (Tex.
App.CDallas 2006, no pet.).  Under section
35.003(a), the judgment creditor may file a properly authenticated copy of a
foreign judgment Ain the office of the clerk of any court of competent
jurisdiction of this state.@  Tex. Civ. Prac.
& Rem. Code Ann. ' 35.003.  Notably, in this statute the legislature does not
state which Texas courts have subject matter jurisdiction over filings of
foreign judgments under the Uniform Act.  Under section 35.003, judgment
creditors must file foreign judgments in a court that would have had
subject-matter jurisdiction to issue them in the first instance.  Though the
district court below is such a court, section 35.003 does not establish this
jurisdiction.  The Texas Constitution and the Government Code do.[27]









In section 35.003, the Texas
Legislature told judgment creditors exactly where they may file foreign
judgmentsCin any court of competent jurisdiction in the State of Texas.  Language
similar to that in section 35.003 has been held to be venue language.[28] 
Although venue statutes often establish venue in one or more Texas counties, a
statute allowing for proper venue in any Texas county is still a valid venue
statute. 













Under the majority=s interpretation of section 35.003,
the phrase Aof this state@ means Ain a county in which venue is proper under the general venue
statute.@  See supra p. 12.  This
interpretation fails to give effect to the plain meaning of this language from
section 35.003, under which a judgment creditor such as Grossman may assert an
enforcement proceeding in whatever court of competent jurisdiction in Texas it
chooses.[29] Grossman
complied with all of the requirements of the Uniform Act, and filed the Florida
judgments in a Texas court of competent jurisdiction. But, under the majority=s interpretation, Grossman is not
permitted to enforce the judgments in any Texas county; rather, Grossman must
file in the county in which all or a substantial part of the Aevents or omissions giving rise to
the claim@ occurred or in which Cantu resided when Athe cause of action accrued.@  This interpretation is contrary to
the plain meaning of Aany court of competent jurisdiction of this state.@[30]  See Agbor, 952 S.W.2d
at 505 (stating courts should give effect to the unambiguous meaning of a
statute=s language); Revey v. Peek,
951 S.W.2d 920, 924 (Tex. App.CTexarkana 1997, no writ) (stating that section 35.003 clearly
provides that a foreign judgment may be filed anywhere in Texas); Gay v. Gay,
No. 05-98-02020-CV, 2001 WL 477643, at *1 (Tex. App.CDallas May 8, 2001, no pet.) (not
designated for publication) (holding that judgment creditor complied with all
the requirements of the Uniform Act in his filing, even though he filed
judgments enforcing New York divorce decree in Texas county other than county
in which the judgment debtor resided); Moncrief, 1991 WL 258684, at *2
(holding that Uniform Act gives judgment creditor the right to file foreign
judgment in the clerk=s office of any court of competent jurisdiction in Texas and
that creditor was not required to comply with section 15.002).  This court
should presume that the legislature meant what it said in section 35.003, and
that it did not include words in the statutory text that serve no purpose. 
More importantly, this court should honor the legislature=s prerogative to determine where
foreign judgments may be filed and not supplant the legislature=s policy choice by failing to give
effect to the unambiguous statute.  See Lee v. City of Houston, 807
S.W.2d 290, 293 (Tex. 1991).  Thus, even if it were appropriate to apply venue
principles to proceedings under the Uniform Act, section 15.002 would not apply
because section 35.003 would be a permissive venue statute.  

The out-of-state authorities on which
the majority=s entire analysis rests are not persuasive.  See Ex parte Wells,
567 So.2d 388, 389B90 (Ala. Ct. App.1990) (failing to explain how allowing
filing of foreign judgment in Aany circuit court of this state@ was consistent with applying the
general venue statute and noting that judgment creditor failed to respond to
the debtor=s venue arguments in the trial court and did not file a brief on appeal);
Cherwood v. Marlin Leasing Corp., 601 S.E.2d 356, 357B58 (Ga. Ct. App. 2004) (relying on
Georgia Constitution=s venue provisions, which would trump any conflicting
statute, as well as very broad definition of Acivil cases,@ the term used in that constitutional venue provision); Garrett v. Ok.
Panhandle State Univ., 156 P.3d 48, 50B51 (Ok. Civ. App. 2006) (failing to
explain how allowing filing of foreign judgment in Aany county of this state@ was consistent with applying the
general venue statute and basing decision on results of the interpretation
rather than on the language of the statutes).  The majority correctly points
out that this court must construe the Uniform Act to effect its general purpose
to make uniform the law of those states that enact it.  Nonetheless, each state=s venue provisions are different, and
some, as in Georgia, are in the state=s constitution and thus trump any
conflicting statute.  See Cherwood, 601 S.E.2d at 357B58.  Out of 49 jurisdictions that
have enacted the Uniform Act, the majority cites decisions from three as supporting
its analysis and disagrees with one unpublished Texas decision[31]
on this issue.  The interest of uniformity does not weigh heavily in favor of
the majority=s analysis.

For these reasons, the court errs in
applying section 15.002, in sustaining Cantu=s first issue, and in reversing the
trial court=s judgment.  The trial court correctly denied Cantu=s motion to transfer venue;
therefore, this court should overrule Cantu=s first issue.








The trial court did not err in concluding that the
judgment debtor did not establish grounds for denying the foreign judgments
full faith and credit.

 

In his AMotion for New Trial, Alternatively,
Motion for Denial of Recognition of Foreign State Judgment,@ Cantu asserted that the Florida
judgments are not entitled to full faith and credit and are void because the
Florida court (1) allegedly lacked personal jurisdiction over him, (2)
allegedly violated due process in the manner in which it struck Cantu=s pleadings, and (3) allegedly never
addressed whether it could exercise personal jurisdiction over Cantu. 
Presuming without deciding that these grounds, if proved, would be proper bases
for denying full faith and credit, on this record, the trial court did not err
in concluding that Cantu did not prove these grounds by clear and convincing
evidence.  See Mindis Metals, Inc., 132 S.W.3d at 484 (stating
that judgment debtor responding to foreign judgment properly filed under the
Uniform Act must prove by clear and convincing evidence that judgment is not
entitled to full faith and credit).  Therefore, this court should overrule 

Cantu=s second issue and affirm the trial
court=s rulings. 

Conclusion








The
court does not analyze the meaning of the statutory language on which this case
turns but implicitly holds that a post-lawsuit enforcement proceeding under the
Uniform Act is a Alawsuit@ as that term is used in the Texas venue statute.  In doing
so the court not only ignores the plain meaning of that statute but also
thwarts the purposes of the Uniform Act in two distinct ways.  First, in
applying the venue statute to enforcement proceedings the court  undermines
principles of uniformity.  Because the Texas venue statute is not included in
the counterpart statute of any other states, this court=s incorporation of it into the
Uniform Act places Texas in a singular minority.  The surplusage the court
engrafts on the Uniform Act countermines uniformity among the states.  Second,
because the dominant purpose of the Uniform Act is to provide a summary
procedure for the expeditious enforcement of a foreign judgment after the
lawsuit is over, the legislature did not intend for this post-lawsuit procedureCwhich has none of the indicia of a Alawsuit@Cto fall within the meaning of that
term as used in the venue statute.  Nor did the legislature intend for a
Uniform Act proceeding to be the equivalent of a common-law action to enforce a
foreign judgment with venue rights for the judgment debtor.  Indeed, a primary
purpose in enacting the Uniform Act was to eliminate the need for judgment
creditors to suffer the time and expense of filing lawsuits in Texas to enforce
foreign judgments by instead providing a statutory Ashort-cut@ procedure for that purpose.  But
even if a proceeding under the Uniform Act were a Alawsuit,@ as the court implicitly holds today,
the general venue statute still should not apply because the legislature has
stated unequivocally that proceedings under the Uniform Act Amay be filed in the office of the
clerk of any court of competent jurisdiction of this state.@  For these reasons, the trial court
did not err in denying the motion to transfer venue and this court should
affirm, not reverse, the trial court=s judgment.  

 

 

/s/        Kem Thompson Frost

Justice

 

 

Judgment rendered and
Majority and Dissenting Opinions filed January 29, 2008.

 

Panel consists of
Justices Frost, Seymore, and Guzman.  (Seymore, J., majority).  

 









[1]  Nothing in the record reflects that Cantu appealed
from the second judgment.





[2]  See Don Docksteader Motors, Ltd. v. Patal
Enterprises, Ltd., 794 S.W.2d 760, 761 (Tex. 1990).





[3]  The Uniform Act states in pertinent part:  

' 35.001.           Definition

     In this chapter, Aforeign judgment@ means a judgment . . . of any . . . court that is
entitled to full faith and credit in this state.  

. . . .

' 35.003.           Filing and Status of Foreign
Judgments

            (a)  A copy of a foreign judgment
authenticated in accordance with an act of congress or a statute of this state
may be filed in the office of the clerk of any court of competent jurisdiction
of this state.

(b)  The clerk shall treat the foreign judgment in the
same manner as a judgment of the court in which the foreign judgment is filed.

(c)  A filed foreign judgment has the same effect and
is subject to the same procedures, defenses, and proceedings for reopening,
vacating, staying, enforcing, or satisfying a judgment as a judgment of the
court in which it is filed.

' 35.004.           Affidavit; Notice of Filing

(a) At the time a foreign judgment is filed, the
judgment creditor or the judgment creditor=s
attorney shall file with the clerk of the court an affidavit showing the name
and last known post office address of the judgment debtor and the judgment
creditor.

(b) The clerk shall promptly mail notice of the filing
of the foreign judgment to the judgment debtor at the address given and shall
note the mailing in the docket.

(c) The notice must include the name and post office
address of the judgment creditor and if the judgment creditor has an attorney
in this state, the attorney=s name and
address.

' 35.005.           Alternate Notice of FilingCJudgment Creditor

(a) The judgment creditor may mail a notice of the
filing of the judgment to the judgment debtor and may file proof of mailing
with the clerk.

(b) A clerk=s
lack of mailing the notice of filing does not affect the enforcement
proceedings if proof of mailing by the judgment creditor has been filed.

Tex. Civ. Prac. & Rem.
Code Ann. '' 35.001, 35.003B35.005. (Vernon 1997).





[4]  See U.S. Const. art. IV, ' 1.





[5]  Specifically, (1) as judgment creditor, Grossman
filed  properly authenticated copies of the Florida judgments in the clerk=s office of a Texas court of competent jurisdictionCthe Harris County District Clerk=s office; (2) when Grossman filed the Florida
judgments, his attorney filed with the clerk of the court an affidavit showing
the name and last known post office address of the judgment debtor (Cantu) and
the judgment creditor (Grossman); and (3) the judgment creditor (Grossman)
mailed a notice of filing of the judgments to the judgment debtor (Cantu) and
filed a proof of mailing with the clerk.





[6]  In their appellate briefs, the parties argue the
meaning of the term Alawsuit@ as
used in the general venue statute and whether an enforcement proceeding is a Alawsuit.@





[7]  See Lawrence Systems, Inc. By and Through
Douglas-Guardian Warehouse Corp. v. Superior Feeders, Inc., 880 S.W.2d 203,
206 (Tex. App.CAmarillo 1994, writ denied) (exploring the
intended purposes of the Uniform Act).  Lawrence Systems examines a
number of cases pertaining to the intended purpose of the Uniform Act.  Lawrence Systems, Inc., 880 S.W.2d at 206B07; see Eschenhagen v. Zika,
144 Ariz. 213, 696 P.2d 1362, 1367 (Ct. App. 1985) (explaining that one of the
purposes of the Uniform Act is to provide speedy and economical enforcement of
foreign judgments); Alexander Const.
Co. v. Weaver, 3 Kan. App.2d 298, 594 P.2d 248, 250 (1979) (stating that
the Uniform Act was instituted to provide a more effective and efficient
time-saving procedure for enforcing foreign judgments).  See also 50
C.J.S. Judgments ' 984 (2007) (providing that the Uniform Act is
designed to simplify enforcement procedures by eliminating the necessity of
multiple lawsuits).





[8]  Compare Black=s
Law Dictionary 887 (6th ed. 1990)
(defining Alawsuit@ as
A[a] vernacular term for a suit, action, or cause
instituted or depending [sic] between two private persons in the courts of law@), with Black=s
Law Dictionary 887, 895 (7th ed. 1999)
(defining Alawsuit@ as
synonymous with Asuit@ and defining Asuit A as Aany proceeding by a party or parties against another
in a court of law@). 





[9]  Compare Webster=s
New Int=l Dictionary 1280 (3d ed.
1961) (defining Alawsuit@ as
Aa suit in law: a case before a court: any of various
technical legal proceedings@) with VIII The Oxford English Dictionary 720
(2d ed. 1989) (defining Alawsuit@ as
Aa suit in law; a prosecution of a claim in a court of
law@), and
Random House Dictionary of the English Language 1091 (2d ed. unabr.
1987) (defining Alawsuit@ as
Aa case in a court of law involving a claim, complaint,
etc. by one party against another; suit at law@). 





[10]  Though the current edition of Black=s Law Dictionary defines Alawsuit@ as
Aany proceeding by a party or parties against another
in a court of law,@ earlier editionsCthe
ones that were current when the legislature enacted the venue statuteCcontain a narrower primary definition of the word that
embodies as a necessary component a claim or cause of action. See also, VIII The Oxford English Dictionary 720
(2d ed. 1989) (defining Alawsuit@ as
Aa suit in law; a prosecution of a claim in a court of
law@); Random House
Dictionary of the English Language 1091 (2d ed. unabr. 1987) (defining Alawsuit@ as
Aa case in a court of law involving a claim, complaint,
etc. by one party against another; suit at law@). 





[11]  See Schwartz v. F.M.A. Properties Corp., 714
S.W.2d 97, 100 (Tex. App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.) (noting that the Uniform Act is an
enforcement statute and a foreign judgment is not entitled to full faith and
credit unless it is final).





[12]  Schwartz, 714 S.W.2d at 100 (providing that
the Uniform Act is an enforcement statute); Moncrief v. Harvey, No.
05-90-01116-CV, 1991 WL 258684, at *2 (Tex. App.CDallas Nov. 26, 1991, writ denied) (not designated for publication). 





[13]  Moncrief, 1991 WL 258684, at *2. 





[14]  The majority states that the Moncrief court
based its holding on waiver.  See ante at p. 11.  While the Moncrief court
does mention waiver, it based its holding mainly on the fact that the Uniform
Act allows the judgment debtor post-judgment procedures to challenge the
judgment; whereas venue is a pre-trial matter regarding the location of a
lawsuit that does not apply to post-judgment procedures to challenge a
judgment.  Moncrief, 1991 WL 258684, at *2.  In Moncrief, the
judgment debtor appeared in the lawsuit in Wyoming and did not challenge venue,
thus waiving any venue complaints.  Id.  When the Moncrief court
stated that the judgment debtor waived venue, it was indicating that venue is a
pre-trial matter that was resolved in Wyoming and that venue has no place in
the post-judgment enforcement proceedings.  Id. 





[15]  Richards v. Comm=n for Lawyer Discipline, 81 S.W.3d 506, 508 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (stating that
proceedings directly attacking a Texas judgment must be brought in the court
that rendered the judgment); Dear v. Russo, 973 S.W.2d 445, 448 (Tex.
App.CDallas 1998, no pet.); (AChallenges to foreign judgments filed under the Uniform Act are
generally in the nature of postjudgment proceedings because the filing of the
foreign judgment instantly creates a judgment enforceable in Texas.@). The majority states that its interpretation does
not render this language meaningless because, under its interpretation, the
judgment creditor=s filing of a foreign judgment in any county in Texas
would count for purposes of determining whether the foreign judgment has become
dormant.  See ante at p. 11.  This argument lacks merit because counting
the filing in this way alone does not give effect to the statutory language
stating that the creditor may enforce the judgment in the same manner as a
judgment of the court in which the foreign judgment was filed.  See Tex. Civ. Prac. & Rem. Code Ann. ' 35.003(b), (c).  A judgment rendered by the trial
court below cannot be transferred to Hidalgo County for enforcement based on
allegedly improper venue; rather, such a judgment must be enforced by the judge
of the trial court below.  See Richards, 81 S.W.3d at 508.





[16]  All statutory references in this opinion are to the
Texas Civil Practice and Remedies Code unless otherwise specified.





[17]  Perhaps due to the unusual nature of proceedings
under the Uniform Act, parties sometimes  unnecessarily have filed petitions
and answers and served citation in proceedings under the Uniform Act. See
Walnut Equip. Leasing Co. v. Wu, 920 S.W.2d 285, 285B86 (Tex. 1996) (noting that parties filed petitions
and answers and served citation and the judgment creditor subsequently amended
its petition to assert only a common-law enforcement action; nonetheless the
Texas Supreme Court gave effect to foreign judgment under the Uniform Act
because judgment debtors did not timely challenge the judgment after the
judgment creditor satisfied the requirements of the Uniform Act).  The Uniform
Act does not require, for the enforcement of a judgment of a sister state,
attaching pleadings to the judgment or introducing evidence. Harbison-Fischer
Mfg. Co., Inc. v. Mohawk Data Sciences Corp., 823 S.W.2d 679, 685 (Tex.
App.CFort Worth 1991), judgment set aside by agr.
840 S.W.2d 383 (Tex. 1992).





[18]  Grossman filed two properly authenticated Florida
judgments, an affidavit showing the name and last known post office address of
the judgment debtor and the judgment creditor, and proof of mailing of the
notices of filing of the foreign judgments, just as the legislature specified
in the Uniform Act. 





[19]  A proceeding under the Uniform Act is a unique
procedural animal because the filing (in compliance with the statute) that
commences the proceeding also instantaneously creates an enforceable Texas
judgment. In Walnut Equipment Leasing Co. v. Wu, the judgment creditor
invoked the Uniform Act to enforce a Pennsylvania judgment against judgment
debtors in Texas.  920 S.W.2d 285 (Tex. 1996) (per curiam).  Though not
required to do so by the Uniform Act, the judgment creditor filed a petition
and served the judgment creditor with process.  See id.  Although the
judgment creditor did more than was required by the Uniform Act, it satisfied
all the Uniform Act requirements so that the filing of the judgment and
affidavit contained in the petition constituted a Texas judgment.  See id. 
The only filing the judgment debtors made within thirty days was a general
denial.  See id.  The Texas Supreme Court held that because the 
judgment debtors did not file a motion that would extend the trial court=s plenary power, all subsequent actions in the trial
court were a nullity and the appeal was untimely.  See id. at 285B86.  In so ruling, our high court alluded to a characterization
of a Uniform Act proceeding made by the court of appeals below (which happened
to be this court), stating:

As the court of appeals noted, id. at 277, when
a judgment creditor proceeds under the [Uniform Act], the filing of the foreign
judgment comprises both a plaintiff=s
original petition and a final judgment.

Id. at 286.  Similarly, in the portion of this court=s opinion in Wu with which the high court
agreed, this court noted that the filing of a judgment under the Uniform Act
begins the proceeding but also instantly creates a final judgment:      

A filed foreign judgment has the same effect, and is
subject to the same procedures, defenses, and proceedings for reopening,
vacating, staying, enforcing, or satisfying a judgment as a judgment of the
court in which it is filed.  Tex. Civ.
Prac. & Rem. Code Ann. '
35.003(c).  When a judgment creditor chooses to proceed under the Uniform Act,
the filing of the foreign judgment partakes of the nature of a plaintiff=s original petition and a final judgment:  the
filing initiates the enforcement proceeding, but it also instantly creates
a Texas judgment which is enforceable.

Wu
v. Walnut Equipment Leasing Co., 909
S.W.2d 273, 277 (Tex. App.CHouston [14th
Dist.] 1995) (emphasis added), rev=d 920 S.W.2d 285 (Tex.
1996).  In the course of describing this unique aspect of a Uniform Act
proceeding, both appellate courts in Wu made a figurative reference to a
Apetition@ to
convey the concept that the filing of the foreign judgment in accordance with
the Uniform Act commences the enforcement proceeding.  From context, it is
apparent that these courts and those that have cited this language were not
saying that the filing of the judgment under the Uniform Act literally is a
petition; indeed, they could not have intended a literal meaning because in the
same breath they stated that the filing of the foreign judgment also creates an
enforceable Texas judgment, which is contrary to the nature of a petition.  See
Walnut Equipment Leasing Co., 920 S.W.2d at 285B86; Wu, 909 S.W.2d at 277.  In making these
statements these courts cited and relied on the unambiguous language of the
Uniform Act, which does not require the filing of a petition. See Walnut
Equipment Leasing Co., 920 S.W.2d at 285B86;
Wu, 909 S.W.2d at 277.  There was no issue in Wu as to whether a
Uniform Act proceeding is a Alawsuit@ under the general venue statute.  See Wu,
909 S.W.2d at 277. In Mindis Metals, the judgment creditor did not file
a petition; rather, it filed an authenticated judgment in accordance with the
procedures of the Uniform Act.  See Mindis Metals, Inc., 132 S.W.3d at
483.  Expressing the same concept as the courts in Wu but using
different words, this court stated that when the judgment creditor begins the
proceeding by filing an authenticated copy of a foreign judgment under the
Uniform Act, the judgment becomes enforceable as a Texas judgment on the date
it was filed.  See id.  Though the judgment creditor in Wu and
judgment creditors in other Uniform Act cases have gratuitously and
unnecessarily filed petitions, under the unambiguous language of the Uniform
Act, judgment debtors need not do so, and Grossman did not do so in this case. 
See Tex. Civ. Prac. & Rem.
Code Ann. '' 35.001, 35.003B35.005;
Walnut Equipment Leasing Co., 920 S.W.2d at 285B86; Mindis Metals, Inc., 132 S.W.3d at 483; H.
Heller & Co., Inc. v. La.-Pac. Corp., 209 S.W.3d 844, 849 (Tex. App.CHouston [14th Dist.] 2006, pet. denied) (stating that
judgment creditor first initiated common law suit to enforce a foreign judgment
but then asserted a Uniform Act proceeding by means of an amended petition
satisfying the Uniform Act, which the judgment debtor timely contested).  

 





[20]  See Tex.
Civ. Prac. & Rem. Code Ann. ''
35.005, 34.004.





[21]  Although Cantu is subject to personal jurisdiction
in Texas, the application of Chapter 15 to all proceedings under the Uniform
Act could hamper the collection of judgments in various circumstances. 
Creditors generally would need to file the foreign judgment in a judgment
debtor=s county of residence in Texas and then potentially to
record the Texas judgment or take other collection actions in other counties in
which nonexempt assets are located.  Furthermore, if, in a foreign judgment, a
plaintiff not residing in Texas is awarded recovery against a defendant not
residing in Texas, based on an occurrence that is not connected to Texas, and
if the judgment creditor wished to use the Uniform Act to enforce the judgment against
property in Texas (for example, to garnish a debt owed to the judgment debtor
by a Texas creditor), if Chapter 15 were to apply, then there would be no Avenue@ available to
file the foreign judgment.  Due to the applicability of personal-jurisdiction
requirements and the availability of a forum-non-conveniens dismissal in favor
of litigating claims in other states, this problem should not arise in a
lawsuit in which a nonresident plaintiff sues a nonresident defendant asserting
claims based on an occurrence with no connection to Texas.





[22]  See Lenchyshyn v. Pelko Elec., Inc., 723
N.Y.S.2d 285, 289B90 (N.Y. App. Div. 2001). 





[23]  See Shaffer v. Heitner, 433 U.S. 186, 210 & n.36, 97 S. Ct. 2569, 2583 &
n.36, 53 L. Ed. 2d 683 (1977) (stating that once a court with jurisdiction over
the subject matter and the parties determines that one person is a debtor to
another, there should be no due process problem in the judgment creditor=s realizing upon the property of
the judgment debtor in another state in which the debtor has property but is not subject to in personam jurisdiction); Lenchyshyn,
723 N.Y.S.2d at 289B90 (stating that court in which judgment creditor
files judgment under New York version of Uniform Act need not be able to
exercise in personam jurisdiction over the judgment debtors and collecting
cases from many other states). 





[24]  See supra note 7 (providing authority that
explores the purpose of the Uniform Act). 





[25]  See ante at p.6.  





[26]  See In re Parr, 199 S.W.3d 457, 461 (Tex.
App.CHouston [1st Dist.] 2006, no pet.) (holding that
statute is a venue statute even though it contains the word Ajurisdiction@
and does not contain the word Avenue@); Harrington v. State, 363 S.W.2d 321, 322B23 (Tex. Civ. App.CAustin
1962, writ ref=d n.r.e.) (same); Traders & Gen. Ins. Co. v.
Curby, 103 S.W.2d 398, 399 (Tex. Civ. App.CWaco 1937, no writ) (same); Lloyds Cas. Co. of New York v. Lem,
62 S.W.2d 497, 498B99 (Tex. Civ. App.CGalveston
1933, writ dism=d) (same).  





[27]  See Tex.
Const. art. V, ' 8; Tex. Gov=t
Code Ann. ' 24.007 (Vernon 2004); Dubai Petroleum Co. v. Kazi, 12 S.W.3d
71, 74B75 (Tex. 2000).  





[28] See SMS Demag Aktiengesellschaft v. Material Scis.
Corp., 434 F. Supp. 2d 581, 581B83
(C.D. Ill. 2006) (construing agreement that Avenue
shall be proper in a court of competent jurisdiction sitting in the State of
Illinois@ as allowing suit in any court of competent
jurisdiction in Illinois and enforcing this agreement to allow suit in the
United States District Court for the Central District of Illinois, even though
venue in this district would be improper under the federal venue statues); Gambill
v. Town of Ponder, 494 S.W.2d 808, 811 (Tex. 1973) (discussing with
approval case in which court of appeals held that revised civil statute
allowing suit Ain any Court of competent jurisdiction in Travis
County@ was permissive venue statute that applied in place of
general venue statute and that allowed suit to be filed in any court in Travis
county having jurisdiction); Morris v. Scaling, 347 S.W.2d 377, 379
(Tex. Civ. App.CFort Worth 1961, writ dism=d) (holding that section of Texas Business Corporation
Act allowing petition to be filed in Aany
court of competent jurisdiction in the county in which the principal office of
the corporation is located@ was a venue
statute).  Regardless of any differences that there may be between the law
governing the enforcement of forum selection clauses and the law regarding
venue selection clauses, the court in SMS Demag Aktiengesellschaft interpreted
language similar to that in section 35.003 as allowing venue of an action in
any court of competent jurisdiction in the state.  See SMS Demag
Aktiengesellschaft, 434 F. Supp. 2d at 581B83. 





[29]  The majority relies on Munn v. Mohler, 251
S.W.2d 801 (Tex. Civ. App.CWaco 1952, no
writ).  See ante at p. 12.  That case is not on point.  In Munn,
it was uncontested that the plaintiff had filed a lawsuit based on a claim
provided in a federal statute for the recovery of overtime compensation.  See
Munn v. Mohler, 251 S.W.2d 801, 802B3
(Tex. Civ. App.CWaco 1952, no writ).  Munn did not involve the
domestication and enforcement in Texas of a final judgment from another state. 
See id.  Moreover, the federal statute did not state that such suits
could be filed in any court of competent jurisdiction in Texas; whereas, the
Uniform Act refers to any court of competent jurisdiction in Texas.  Even if Munn
were on point, it is not binding on this court, and its reasoning is not
persuasive in the context of this case.  





[30]  This interpretation is also at odds with this court=s prior precedent.  In Mindis Metals, this
court stated that when a judgment creditor files an authenticated copy of a
foreign judgment under the Uniform Act, a prima facie case for its enforcement
is presented, and the burden then shifts to the judgment debtor to prove that
the foreign judgment should not be given full faith and credit.  See Mindis
Metals, Inc., 132 S.W.3d at 484.  This court stated that the presumption of
validity can be overcome only by clear and convincing evidence to the
contrary.  Id.  Therefore, under Mindis Metals, because Grossman
filed  authenticated copies of  the foreign judgments under the Uniform Act,
the burden then shifted to Cantu to prove by clear and convincing evidence that
the Florida judgments should not be given full faith and credit.   Id. 
This court in Mindis Metals imposed no burden on the judgment
creditor to establish proper venue.  In addition, a foreign judgment filed in
Texas under the Uniform Act is subject to the same procedures, defenses, and
proceedings for reopening, vacating, staying, enforcing, or satisfying a
judgment as a judgment of the court in which it is filed.  In Texas, the
procedural devices by which a party may directly attack a Texas judgment must
be deployed in the court that rendered the Texas judgment, which, under the
Uniform Act, is the court in which the judgment creditor files the judgment in
compliance with the Uniform Act.  See Tex.
Civ. Prac. & Rem. Code Ann. '
35.003; Mindis Metals, Inc., 132 S.W.3d at 483 (stating that, if a
judgment creditor follows the procedures of the Uniform Act for filing a
foreign judgment, A[t]he judgment [becomes] enforceable as a Texas
judgment on the date it was filed@); Richards,
81 S.W.3d at 508 (stating that proceedings directly attacking a Texas judgment
must be brought in the court that rendered the judgment). 

 





[31]  Moncrief, 1991 WL 258684, at *2.