•           •           • 
 • • •





OPINION

Nos. 04-09-00079-CV & 04-09-00080-CV

COUNSEL FINANCIAL SERVICES, L.L.C.,
Appellant

v.

DAVID MCQUADE LEIBOWITZ, P.C., and David McQuade Leibowitz,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2008-CI-20084 & 2008-CI-20085
Honorable John D. Gabriel, Jr., Judge Presiding
 
Opinion by:    Karen Angelini, Justice
 
Sitting:            Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed: February 10, 2010

REVERSED AND RENDERED
            The issue in this appeal is whether the Craddock motion for new trial standard relating to
default judgments applies to proceedings under the Uniform Enforcement of Foreign Judgments Act.
We hold that it does not.
Background
            Appellant Counsel Financial Services, L.L.C. (“CFS”) provides case financing for attorneys.
In 2004, CFS and David McQuade Leibowitz, P.C. entered into a loan agreement whereby CFS lent
the professional corporation over $4.5 million. In September 2007, CFS and the professional
corporation entered into a Fourth Amended and Restated Revolving Promissory Note in an amount
of over $5 million. Leibowitz signed a personal guaranty of the entire amount of the Note. 
            On August 29, 2008, claiming that David McQuade Leibowitz and his professional
corporation (hereinafter “Leibowitz”) were in default of the Note, CFS filed in New York state court
a Motion for Summary Judgment in Lieu of Complaint pursuant to Rule 3213 of the New York Civil
Practice Law and Rules.


 On September 4, 2008, Leibowitz was properly served with the Motion for
Summary Judgment in Lieu of Complaint. His deadline to respond was October 27, 2008; however,
on October 27, 2008, Leibowitz failed to respond. 
            On November 5, 2008, Leibowitz filed an “Advisory to the Court,” informing the New York
state court that on “October 27, 2008, defendants agreed to and accepted an offer by plaintiff of a
renewal of Defendant David McQuade Leibowitz P.C.’s line of credit, which is the subject matter
of this pending action, thus rendering the pending action moot.” On November 6, 2008, CFS’s
Motion for Summary Judgment in Lieu of Complaint was set for a hearing. Leibowitz appeared by
telephone and informed the court that the matter had been resolved. CFS’s attorney disagreed, stating
that it had not, and asked for the court to grant CFS’s motion. The court then gave Leibowitz an
additional week to file papers responsive to the summary judgment motion. Thus, Leibowitz had
until November 13, 2008, to file responsive papers. However, on November 13, 2008, Leibowitz,
once again, failed to file responsive papers.
            On November 14, 2008, Leibowitz hired an attorney who practices in New York. On
November 20, 2008, his attorney appeared at the second hearing on CFS’s Motion for Summary
Judgment in Lieu of Complaint and asked for additional time to file responsive papers. The trial
court denied the motion for additional time and granted CFS’s motion for summary judgment. 
            On November 25, 2008, the New York court signed a judgment in favor of CFS:
The Plaintiff, COUNSEL FINANCIAL SERVICES, LLC, having moved by
and through its attorneys, for an Order pursuant to CPLR 3213 granting the entry of
judgment against the Defendants, DAVID MCQUADE LEIBOWITZ, P.C. and
DAVID MCQUADE LEIBOWITZ, ESQ., and for such other, further and different
relief as to the Court may be deemed just and proper; and said motion having first
come on to be heard before this Court at a Special Term held in and for the County
of Erie on November 6, 2008, with Philip B. Abramowitz, Esq. appearing for the
Plaintiff and David McQuade Leibowitz, Esq. appearing by telephone for the
defendants, this Court having granted David McQuade Leibowitz’s request for a two
week adjournment until November 20, 2008, so that the defendants could submit
opposition papers in addition to their unverified “Advisory to the Court” dated
November 5, 2008, upon the Court’s specific condition that any and all additional
opposition papers were required to be filed by November 13, 2008; and the
defendants having failed to file any additional opposition papers by the November 
13, 2008, due date; and Bruce S. Zeftel, Esq., having been retained by defendants on
November 14, 2008; and 
 
This matter having come before the Court on November 20, 2008, with Philip
B. Abramowitz, Esq., appearing for Plaintiff and Bruce S. Zeftel, Esq., appearing for
defendants.
 
NOW, upon:
 
1.Plaintiff’s Summons and Notice of Motion for Summary Judgment
in Lieu of Complaint dated August 29, 2008, and 
 
2.Affidavits of Philip B. Abramowitz, Esq., and Michael P. Callahan,
in support of Plaintiff’s Motion for Summary Judgment dated August 29, 2008, with
attached exhibits, and 
 
3.Unverified Advisory to the Court dated November 5, 2008, and
 
4.Statement for Judgment verified by Philip B. Abramowitz, Esq., on
November 20, 2008, showing costs and disbursements; it is hereby
 
ORDERED and ADJUDGED, that Plaintiff’s Motion for Summary Judgment
in the amount of $5,506,180.96, including interest through November 20, 2008 of
$432,255.92 and late fees and returned fund fees of $68,079.59, plus costs allowed
by statute of $200, fee for index number of $210, fee for RJI of $95, plus expense for
service of summons with notice of $115, totaling $620, for a total sum of
$5,506,800.96, against each Defendant, DAVID MCQUADE LEIBOWITZ, P.C. and
DAVID MCQUADE LEIBOWITZ, ESQ., be and hereby is in all respects
GRANTED.
 
AND, IT IS ORDERED, that Judgment in the amount of $5,506,800.96 be
entered by the Clerk of the Court in favor of COUNSEL FINANCIAL SERVICES,
LLC as against each Defendant DAVID MCQUADE LEIBOWITZ, P.C. and DAVID
MCQUADE LEIBOWITZ, ESQ., 
 
AND, that the Plaintiff, COUNSEL FINANCIAL SERVICES, LLC, have
execution therefore.
 
SO ORDERED.
            On December 2, 2008, pursuant to the Uniform Enforcement of Foreign Judgments Act
(“UEFJA”), CFS filed an authenticated copy of the New York judgment in Texas state district court.
On December 29, 2008, Leibowitz filed a Motion for Relief From Enforcement of Foreign Judgment
and argued that the trial court should apply the Craddock motion for new trial standard.


 On January
26, 2009, at a hearing on his motion, Leibowitz argued that because he had presented evidence
sufficient under the Craddock motion for new trial standard, the trial court should refuse to enforce
the New York judgment against him. The trial court agreed, and on January 30, 2009, signed an
Order Granting Motion for Relief From Enforcement of Foreign Judgment:
ON THIS DAY CAME ON TO BE HEARD the Motion for Relief from
Enforcement of Foreign Judgment (“the Motion”) filed by DAVID MCQUADE
LEIBOWITZ, and DAVID MCQUADE LEIBOWITZ, P.C. The Court after
considering the Motion and the evidence presented thereon is of the opinion that the
relief requested therein should be and hereby is GRANTED as follows.
 
In granting this relief the Court finds as follows:
 
            1.         The Defendants are entitled to directly attack the New York State
Court Judgment that the Plaintiff seeks to domesticate (“the
Judgment”) upon any grounds that the Judgment can be attacked
under Texas law.
 
            2.         Under Texas law, the Defendants have established their entitlement
to a new trial and to have the judgment vacated because:
 
                        a.         The Defendants’ default in the New York Action is
not the result of conscious indifference, but is the
result of accident or mistake.
 
                        b.         The Defendants have established and set up the
meritorious defenses that the underlying indebtedness
was not due, as alleged by the Plaintiff, that the
underlying note was not in default as of the date suit
was filed, and that the amounts alleged to be owed on
the note in question were not actually owed.
 
IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Judgment
is not entitled to full faith and credit and cannot be enforced in the State of Texas
because it is subject to the defenses allowed pursuant to [section] 35.003(c) of the
Texas Civil Practice and Remedies Code, which the Defendants have established by
clear and convincing evidence. Any relief not herein expressly granted is hereby
denied. IT IS SO ORDERED AS AFORESAID.
            CFS appeals the trial court’s order refusing to enforce the New York judgment.


 
Craddock
            Pursuant to Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126
(1939), where a defendant had proper notice, a default judgment should be set aside and a new trial
granted if (1) the failure to answer or appear at trial was not intentional or the result of conscious
indifference but was due to a mistake or accident; (2) the defendant sets up a meritorious defense;
and (3) the motion is filed at such time that granting a new trial would not result in delay or
otherwise injure the plaintiff. See In re R.R., 209 S.W.3d 112, 114-15 (Tex. 2006) (applying
Craddock standard). Leibowitz argues that because CFS filed its UEFJA proceeding less than thirty
days after the New York judgment was signed, the Craddock motion for new trial standard applies.
We disagree. 
            The United States Constitution requires each state to give full faith and credit to the public
acts, records, and judicial proceedings of every other state. See U.S. Const. art. IV, § 1. Texas
recognizes two methods of enforcing a foreign judgment. Charles Brown, L.L.P. v. Lanier
Worldwide, Inc., 124 S.W.3d 883, 902 (Tex. App.—Houston [14th Dist.] 2004, no pet.). First, a
judgment creditor may bring a common law action to enforce a judgment. See Tex. Civ. Prac. &
Rem. Code Ann. § 35.008 (Vernon 2008) (“A judgment creditor retains the right to bring an action
to enforce a judgment instead of proceeding under [the UEFJA].”). “When he does so, his petition
as plaintiff initiates the action; the judgment debtor, as defendant, can assert his defenses; and a
judgment results.” Moncrief v. Harvey, 805 S.W.2d 20, 22 (Tex. App.—Dallas 1991, no writ).
Second, a judgment creditor may enforce a foreign judgment under the UEFJA as provided in
Chapter 35 of the Texas Civil Practice and Remedies Code. Id.; see Tex. Civ. Prac. & Rem. Code
Ann. §§ 35.001-35.008 (Vernon 2008). When a judgment creditor chooses to proceed under the
UEFJA, the filing of a foreign judgment is in the “nature of both a plaintiff’s original petition and
a final judgment: the filing initiates the enforcement proceeding, but it also instantly creates a Texas
judgment that is enforceable.” Moncrief, 805 S.W.2d at 22. Thus, the UEFJA “provides ‘a speedy
and economical method of doing that which ... is required ... by the Constitution of the United
States,’ i.e., giving full faith and credit to the judgments of other state courts.” Reading & Bates
Constr. Co. v. Baker Energy Res. Corp., 976 S.W.2d 702, 712 (Tex. App.—Houston [1st Dist.]
1998, pet. denied) (quoting Unif. Foreign Judgments Act, prefatory note, 13 U.L.A. 150 (1986))
(alterations in original). 
            A foreign judgment filed under the UEFJA is treated in the same manner as a judgment of
the court to which the foreign judgment is filed. Tex. Civ. Prac. & Rem. Code Ann. § 35.003(b)
(Vernon 2008). And, pursuant to section 35.003(c) of the UEFJA, such a judgment has “the same
effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating,
staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed.” Id. §
35.003(c). 
            In his Motion for Relief From Enforcement of Foreign Judgment, Leibowitz argued that
pursuant to section 35.003(c) of the UEFJA, he is entitled to raise any procedure, defense, or
proceeding for reopening or vacating the New York judgment that he could have raised in the Texas
court. Thus, according to Leibowitz, because CFS filed its enforcement action under the UEFJA less
than thirty days from the time the New York judgment was signed, the Craddock standard should
apply. Leibowitz reasons that “[i]f the default judgment had been [signed] by a Texas court, [he]
would have [had] every right to defend the enforcement of the judgment (within thirty days of its
entry) by the filing of a motion for new trial.” In essence, Leibowitz asked the Texas court to treat
his motion for relief from enforcement as a direct attack on the New York judgment.  
            In response, CFS argued that (1) Craddock is not one of the recognized exceptions to full
faith and credit; (2) applying the Craddock standard is like a direct attack on the foreign judgment
that impermissibly goes to the merits of the original controversy; and (3) even if Craddock did apply
to actions under the UEFJA, the New York judgment was not a default judgment that would fall
under Craddock. 
            The trial court agreed with Leibowitz, and while it clearly could not order a New York court
to grant Leibowitz a new trial, see Moncrief, 805 S.W.2d at 22 n.2, it found that pursuant to
Craddock, Leibowitz was “entitled” to a new trial and to have the New York judgment vacated.
Therefore, the trial court refused to enforce the New York judgment. 
            Under the UEFJA, the party seeking to enforce a foreign judgment has the initial burden to
present a judgment that appears on its face to be a final, valid, and subsisting judgment. Russo v.
Dear, 105 S.W.3d 43, 46 (Tex. App.—Dallas 2003, pet. denied). The burden then shifts to the
judgment debtor to prove by clear and convincing evidence that the foreign judgment should not be
given full faith and credit. Mindis Metals, Inc. v. Oilfield Motor & Control, Inc., 132 S.W.3d 477,
484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). There are five well-established exceptions
to full faith and credit requirements: (1) the foreign judgment is interlocutory; (2) the foreign
judgment is subject to modification under the law of the rendering state; (3) the rendering state court
lacked jurisdiction; (4) the foreign judgment was procured by extrinsic fraud; and (5) pursuant to
section 35.003(c) of the Texas Civil Practice and Remedies Code, the period of time to file the
foreign judgment had expired. Id. Leibowitz did not provide any evidence of these exceptions at the
hearing on his motion. Instead, he argued that a sixth Craddock exception should be created. 
            For support, Leibowitz cites Moncrief v. Harvey, 805 S.W.2d 20, 23 (Tex. App.—Dallas
1991, no writ), and Tracy v. Top Drawer Medical Art, Inc., No. 08-02-00273-CV, 2003 WL
22361477 (Tex. App.—El Paso 2003, no pet.), which he claims stand for the proposition that
pursuant to section 35.003(c) of the UEFJA, a judgment debtor’s motion to contest recognition of
a foreign judgment may be treated like a direct attack on the foreign judgment. However, neither
Moncrief nor Tracy stand for such a proposition. 
            In Moncrief, 805 S.W.2d at 22, the issue was whether the Dallas Court of Appeals had
jurisdiction over the appeal. The judgment creditor had filed an authenticated foreign judgment
pursuant to the UEFJA. Id. The judgment debtor then filed a motion asking the Texas court to
suspend execution of the foreign judgment, which the judgment creditor argued on appeal could not
operate as a motion for new trial. Id. at 22, 23. And, because no motion for new trial had been filed,
the judgment creditor argued that the notice of appeal was untimely and the appellate court had no
jurisdiction over the appeal. Id. at 22. 
            In holding that a judgment debtor’s motion to suspend execution operates procedurally like
a motion for new trial in the context of a UEFJA proceeding, the Dallas Court of Appeals explained
that “the absence of express statutory procedures for defending against a foreign judgment filed in
a Texas court often leaves the judgment debtor in a procedural quandary.” Id. (quotation omitted).
Because the filing of the foreign judgment constitutes both the original petition and a final judgment
that is enforceable, “a judgment creditor could file a foreign judgment and thereafter obtain a writ
of execution without the trial judge’s ever being aware of it.” Id. The court noted that although the
judgment debtor is “statutorily empowered with the same defenses and proceedings for reopening,
vacating, or staying a filed judgment” pursuant to section 35.003(c), “[i]t is small consolation . . .
to have defenses or proceedings without any window of time in which to assert them.” Id. Yet, the
court noted that it must “presume that, in enacting section 35.003(c), the Legislature intended a just
and reasonable result.” Id. “Therefore, because filing a foreign judgment has the effect of initiating
an enforcement proceeding and entering a final Texas judgment simultaneously, the Legislature must
have intended to empower the judgment debtor with all those defenses and proceedings for
reopening, vacating, or staying a judgment that any judgment debtor can bring postjudgment.” Id.
at 23. The court analogized “the debtor’s position in a 35.003 proceeding to the position of one who
has suffered a no-answer default judgment: there may not have been any opportunity for such a
debtor to have defended against the judgment in a trial, but he is not cut off from any postjudgment
procedures for attacking the judgment.” Id. 
            The court explained that generally, the first step for a judgment debtor to attack a judgment
in place is to file a motion for new trial. Id. However, in an action under the UEFJA, a Texas court
cannot order a new trial to be conducted by a foreign court. Thus, the court rejected the judgment
creditor’s argument that “because a motion to reopen, vacate, or stay a judgment is not a motion that
seeks a substantive change in the judgment, it cannot operate as a motion for new trial,” but instead
constituted a motion to supersede the judgment under Texas Rule of Appellate Procedure 47. Id. In
rejecting this argument, the court noted that any attempt by the judgment debtor “to ask for new trial
from a Texas court, when the original trial was conducted in a Wyoming court, would be
ineffective,” as a Texas court cannot order a Wyoming court to grant a new trial. Id. The court
explained that in initiating the UEFJA proceeding, the judgment creditor’s purpose was not to have
his rights adjudicated in Texas; he had already had them adjudicated in Wyoming. Id. Instead, he
asked only that his judgment be enforced in Texas. Id. Further, when the judgment debtor asked the
Texas courts to stay execution of the judgment, “he was asking them to undo everything that [the
judgment creditor] had accomplished by filing the judgment in Texas.” Id. Thus, the Dallas Court
of Appeals concluded that “any motion to contest the recognition of a foreign judgment, filed within
thirty days after the filing of the foreign judgment, operates as a motion for new trial in the context
of a section 35.003 proceeding.” Id. (emphasis added). 
            In so holding, the court noted that policy reasons supported such reasoning. Id. If a motion
to contest enforcement of the judgment was not treated procedurally as a motion for new trial, then
a judgment debtor would have to file a notice of appeal within thirty days from the time the foreign
judgment was first filed or risk waiving his right to appeal. Id. at 23-24. To compel a judgment
debtor to perfect an appeal within thirty days of the filing of the foreign judgment would minimize
the trial court’s opportunity to review the debtor’s motion to contest recognition of the foreign
judgment. Id. at 24. Instead, the court explained that a better policy is for the trial court to have the
same extended period of time to review the motion to contest recognition as it would have to review
a motion for new trial. Id. “Indeed, until the judgment debtor presses to have his motion to contest
recognition heard, the trial court is probably not even aware that the foreign judgment has been
filed.” Id. “The only alternative would be to compel a judgment debtor to file a motion for new trial
formally complying with Rule 320 of the Texas Rules of Civil Procedure, which,” the court noted,
“would be to require the debtor to file a useless motion that could not possibly be granted.” Id.
Therefore, the Dallas Court of Appeals held that the judgment debtor’s motion to suspend execution
operated procedurally as a motion for new trial, extending the trial court’s plenary power until thirty
days after the motion was overruled. Id. 
            Thus, Moncrief does not stand for the proposition that a judgment debtor’s motion to stop
enforcement from a foreign judgment can be treated like a direct attack on a foreign judgment.
Instead, Moncrief merely explains that for the purpose of appellate timetables, a motion to stop
enforcement of a judgment filed pursuant to the UEFJA operates procedurally as a motion for new
trial.
            Leibowitz also relies on Tracy v. Top Drawer Medical Art, Inc., No. 08-02-00273-CV, 2003
WL 22361477 (Tex. App.—El Paso 2003, no pet.), a memorandum opinion by the El Paso Court
of Appeals. He cites the following language from Tracy: “a motion to contest recognition of a
foreign judgment filed under the UEFJA operates like any post-judgment motion that directly attacks
a final judgment in Texas in a post-judgment proceeding.” Id. at *2. Tracy, however, does not stand
for the proposition that a party can bring a direct attack on a foreign judgment. Tracy, like Moncrief,
dealt with appellate timetables and the trial court’s plenary power. In holding that the trial court had
lost plenary power over the UEFJA proceeding, the court of appeals in Tracy explained that the
judgment debtor’s motion operated procedurally like a motion for new trial:
As the court in Moncrief v. Harvey explained, any motion to contest the recognition
of a foreign judgment, a post-judgment motion, filed within thirty days after the filing
of the foreign judgment, operates as a motion for new trial in the context of a Section
35.003 proceeding. In discussing its policy reasons for treating a motion to contest
recognition of a foreign judgment as the functional equivalent of a motion for new
trial, the Moncrief court noted that doing so extends the appellate timetable for
perfecting an appeal and provides the trial court an opportunity to review the debtor’s
motion to contest recognition in the same extended period of time as it would have
to review a motion for new trial in an ordinary case.
 
On appeal, [the judgment debtor] contends that since his motion contesting
recognition of the foreign judgment did not request a new trial or intend to stay,
vacate, or change the foreign judgment, he should not be held to adhere to the
procedures set out in Moncrief. Rather, [the judgment debtor] asserts his motion was
a collateral attack seeking to avoid the binding force of the judgment by conclusively
establishing that the Wisconsin court lacked jurisdiction and as such, the judgment
was unenforceable in Texas. [The judgment debtor] points out that there is neither
a set procedure for a collateral attack nor any statute of limitations. While we agree
that a challenge to the enforcement of a foreign judgment is in the nature of a
collateral attack in that a defendant may challenge the sister state’s jurisdiction to
render the judgment, [the judgment debtor]’s motion was procedurally in the same
posture as any post-judgment motion filed after a final judgment in Texas. Under
Section 35.003(c) of the Texas Civil Practice and Remedies Code, a filed foreign
judgment has the same effect and is subject to the same procedures, defenses, and
proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as
a judgment of the court in which it is filed. In effect, a motion to contest recognition
of a foreign judgment filed under the UEFJA operates like any post-judgment motion
that directly attacks a final judgment in Texas in a post-judgment proceeding.
Id. at *2 (emphasis added) (citations omitted). Thus, Tracy does not stand for the proposition that
a judgment debtor can bring a direct attack on a foreign judgment, but instead stands for the
proposition that a motion to contest recognition of a foreign judgment operates procedurally like a
motion for new trial for purposes of appellate timetables and the trial court’s plenary power over the
matter.  
            Further, it is well established that when a judgment debtor brings a collateral attack, no
defense that goes to the merits of the original controversy can be recognized. Enviropower, LLC v.
Bear, Stearns & Co., 265 S.W.3d 16, 20 (Tex. App.—Houston [1st Dist.] 2008, no pet.); Russo v.
Dear, 105 S.W.3d 43, 46 (Tex. App.—Dallas 2003, pet. denied). Even when a judgment debtor
argues a recognized exception to the full faith and credit requirements in his motion to contest
recognition, his exception cannot be recognized by a Texas court if it was fully and fairly litigated
by the sister state. See Russo, 105 S.W.3d at 47 (“Even if [the judgment debtor] had argued in her
brief that the Ohio trial court did not have personal jurisdiction over her, she may not raise that
argument now in Texas because the Ohio trial court fully and fairly litigated that issue. The Texas
court’s scope of inquiry into the foreign court’s jurisdiction is limited to whether questions of
jurisdiction were fully and fairly litigated and finally decided by the sister state, and if so, personal
jurisdiction may not be raised again in the Texas Court.”).
            Here, by using the Craddock standard, Leibowitz is bringing a defense that goes to the merits
of the original controversy. He is attempting to relitigate the New York case. Such a standard cannot
apply to full faith and credit actions. As explained by the Fourteenth Court of Appeals in Mindis
Metals, Inc. v. Oilfield Motor & Control, Inc., 132 S.W.3d 477, 485 (Tex. App.—Houston [14th
Dist.] 2004, pet. denied), although a motion to vacate a filed foreign judgment is analogized to a
motion for new trial and generally, a trial court has broad discretion to grant a motion for new trial,
“allowing a trial court the same broad discretion to vacate a properly filed foreign judgment would
override the constitutional requirement that a trial court give full faith and credit to the foreign
judgment unless the debtor proves an exception by clear and convincing evidence.” “Therefore, the
UEFJA provision that a filed foreign judgment is subject to the same procedures, defenses, and
proceedings for vacating a Texas judgment refers to the procedural devices available to vacate a
Texas judgment.” Id. (emphasis added). “It cannot mean that the judgment can be vacated for any
reason sufficient to support a traditional motion for new trial.” Id. 
            Therefore, we hold that the Craddock standard does not apply to UEFJA proceedings.
Due Process
            Leibowitz also argues that the New York court deprived him of his rights under the Due
Process Clause of the Fourteenth Amendment. According to Leibowitz, his testimony at the hearing
“clearly shows that he did not get any notice that a default would occur on November 13, 2008.”
“The only thing he knew was what the Judge told him at the hearing on November 6, 2008.” For support, he cites the following language from Playnation Play Systems v. Guajardo, No.
13-06-00302-CV, 2007 WL 1439740, at *3 (Tex. App.—Corpus Christi 2007, no pet.): “If, however,
the Texas court finds that a foreign court lacked jurisdiction over the parties or property because it
did not allow the defendant to appear, present his or her case, or be fully heard, then the judgment
must be ruled null and void.” Playnation, however, does not stand for the proposition that any time
a judgment debtor can prove he was not allowed to fully present his case, the foreign judgment is
void. 
            In Playnation, a Texas resident was sued in Georgia state court. Id. at *1. In Georgia court,
he filed a motion to dismiss for lack of jurisdiction, arguing that he was not subject to personal
jurisdiction in Georgia. Id. The Georgia court disagreed and held that he had the requisite minimum
contacts with Georgia for it to assert jurisdiction. Id. The Texas resident never appealed the ruling
or appeared at the subsequent trial. Id. The judgment creditor then attempted to domesticate the
Georgia judgment, but the Texas trial court found that the Georgia court lacked personal jurisdiction
over the Texas resident and declared the Georgia judgment void. Id. 
            The Playnation court first noted that pursuant to the Full Faith and Credit Clause, “when a
challenge to a foreign court’s judgment is made on jurisdictional grounds, the reviewing court is
limited to inquiring as to whether the jurisdictional question was fully and fairly litigated and
whether a final judgment as to the jurisdictional issue was rendered.” Id. (emphasis added). The
court explained that the United States Supreme Court stated in Baldwin v. Iowa State Traveling
Men’s Ass’n, 283 U.S. 522, 525 (1931), that “[p]ublic policy dictates that there be an end of
litigation; that those who have contested an issue shall be bound by the result of the contest, and that
matters once tried shall be considered forever settled as between the parties.” Playnation, 2007 WL
1439740, at *3 (quoting Baldwin). Thus, the Playnation court explained that after making sufficient
jurisdictional inquiries, a court is constitutionally obligated to give “full faith and credit” to the
merits issues decided by the foreign court. Id. And, pursuant to Baldwin, “[i]f a defendant is
unsatisfied with the foreign court’s ruling as to jurisdiction, the proper redress is to appeal within
the foreign court’s judicial system.” Id. (emphasis added). “Texas applies the Baldwin precedent, and
thus a properly proven foreign judgment must be recognized and given effect in a Texas court
coextensive with that to which it is entitled in the rendering state.” Id. “A Texas court must limit
itself to the jurisdictional question, and must not investigate the merits of the sister state’s decision.”
Id. (emphasis added). 
            The Playnation court then explained foreign judgments filed pursuant to the UEFJA are
presumed to be valid, the recitations of the judgment itself control the rest of the record, and extrinsic
evidence may not be used. Id. Thus, a “collateral attack fails if the judgment contains jurisdictional
recitals, even if other parts of the record show a lack of jurisdiction.” Id. On appeal, the judgment
debtor argued that the default Georgia judgment was void because the recitals on the face of the
judgment did not assert the trial court’s jurisdiction. Id. at *4. The Playnation court disagreed,
holding that the judgment’s language appropriately recited jurisdictional facts. Id. Further, the
Playnation court noted that “[i]t is clear that [the judgment debtor] was given an opportunity to ‘fully
and fairly’ litigate his claim under the Baldwin test.” Id. The court noted that the judgment debtor
had voluntarily entered a limited appearance and motion to dismiss for lack of jurisdiction in
Georgia. Id. According to the court, there was no evidence that he was prohibited from presenting
his case in the Georgia court, nor was there any evidence that he was not fully heard. Id. Further, the
court noted that he had the right to appeal the judgment in Georgia, but chose not to exercise that
right. Id. 
            Thus, Playnation stands for the proposition that even when a judgment debtor raises the
recognized exception that the sister state court lacked jurisdiction, if that judgment debtor had been
afforded the opportunity to fairly litigate the jurisdictional issue in the sister court, he cannot raise
it again in Texas. See also Russo, 105 S.W.3d at 47 (“Even if [the judgment debtor] had argued in
her brief that the Ohio trial court did not have personal jurisdiction over her, she may not raise that
argument now in Texas because the Ohio trial court fully and fairly litigated that issue. The Texas
court’s scope of inquiry into the foreign court’s jurisdiction is limited to whether questions of
jurisdiction were fully and fairly litigated and finally decided by the sister state, and if so, personal
jurisdiction may not be raised again in the Texas Court.”) (emphasis added); Adriano v. Finova
Capital Corporation, No. 04-02-00796-CV, 2003 WL 21696300, at *2 (Tex. App.—San Antonio
2003, pet. denied) (“In a collateral attack on a sister state’s judgment, the defendant may not bring
a defense that goes to the merits of the original controversy. This is true even as to questions of
jurisdiction if those questions had been fully and fairly litigated and finally decided in the sister
court.”) (emphasis added). 
            Moreover, even if one could raise general due process considerations in a UEFJA proceeding,
there is no evidence in this record to support lack of due process. Leibowitz testified that he was
properly served, had notice of the deadline to file his response to the motion, had notice of the
hearings, appeared (first, telephonically, and then through counsel) at the hearings, and was told by
the New York judge that he had an additional week to file a response to CFS’s motion. Leibowitz
seems to be arguing that he was deprived of due process because he was “tricked” by CFS into
thinking they had renewed the note. These are not due process concerns. 
            Finally, Leibowitz argues that if we agree with CFS, then we should remand this case so that
he can ask the trial court for a stay. In response, CFS argues that Leibowitz waived this issue because
he did not pursue this remedy either by argument or by presenting relevant evidence at the hearing.
Leibowitz claims that he did pursue this relief because he requested in his prayer “any and all relief
to which [he] may be entitled to pursuant to § 35.003(c) of the Texas Civil Practice and Remedies
Code.” 
            Section 35.003(c) provides that “[a] filed foreign judgment has the same effect and is subject
to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or
satisfying a judgment as a judgment of the court in which it is filed.” Tex. Civ. Prac. & Rem. Code
Ann. § 35.003(c) (Vernon 2008). While Section 35.003(c) states that a filed foreign judgment is
subject to the same procedure, defenses, and proceedings for staying a judgment as a judgment of
the court in which it was filed, it is not the provision of the UEFJA that allows a trial court to stay
enforcement of a foreign judgment. Section 35.006 is the provision that allows the trial court to stay
enforcement of the judgment: 
            (a)       If the judgment debtor shows the court that an appeal from the foreign
judgment is pending or will be taken, that the time for taking an
appeal has not expired, or that a stay of execution has been granted,
has been requested, or will be requested, and proves that the
judgment debtor has furnished or will furnish the security for the
satisfaction of the judgment required by the state in which it was
rendered, the court shall stay enforcement of the foreign judgment
until the appeal is concluded, the time for appeal expires, or the stay
of execution expires or is vacated.
 
            (b)       If the judgment debtor shows the court a ground on which
enforcement of a judgment of the court of this state would be stayed,
the court shall stay enforcement of the foreign judgment for an
appropriate period and require the same security for suspending
enforcement of the judgment that is required in this state in
accordance with Section 52.006.
Tex. Civ. Prac. & Rem. Code Ann. § 35.006 (Vernon 2008) (emphasis added). Leibowitz did not
cite Section 35.006 in his motion to stop enforcement of the foreign judgment or during the hearing
on his motion. Further, Section 35.006 requires proof that “the judgment debtor has furnished or will
furnish the security for the satisfaction of the judgment required by the state in which it was
rendered.” Id. Leibowitz testified at the hearing that he has not sought to file a supersedeas bond in
either New York or Texas. We, therefore, decline to remand this matter to the trial court.
Conclusion
            We reverse the trial court’s order and render judgment that the New York Judgment is
entitled to full faith and credit and is fully enforceable in Texas.  
                                                                                    
Karen Angelini, Justice